Hugh V. Greeson, Plaintiff in Error,

*v.*

American Lava Corporation and Insurance Company of North America Companies, Defendants in Error.

392 S.W.2d 931.

(*Knoxville*, September Term, 1964.)

Opinion filed July 30, 1965.

462

Stone & Kirkland, Chattanooga, for plaintiff in error.

Milligan, Hooper & Harris, Chattanooga, for defendants in error.

Mr. Justice Holmes delivered the opinion of the Court.

This is a Workmen's Compensation case in which the Trial Judge found that the petitioner's injury did not arise out of his employment and dismissed the petition for compensation. The employee's motion for a new trial

was overruled and he has duly perfected his appeal to this Court.

In his memorandum opinion, the Trial Judge stated:

"Now, gentlemen, in this case petitioner was walking up some steps when he fell because his leg failed to respond. His leg had similarly given away, and he had fallen at other times and at other places. The injury, if any, was not caused by a hazard peculiar to his employment. It did not have its origin in a risk connected with his employment. It did not flow from his employment as a rational consequence."

The record shows that the plaintiff in error, Greeson, hereinafter referred to as petitioner, had been in the employ of the American Lava Corporation for a number of years. In 1948 it was found that petitioner had a tumor overlying the lower part of his spinal cord. He went to the Vanderbilt University Hospital where he was operated upon. It was not possible to remove all of the tumor and petitioner was sent back to Chattanooga for X-ray therapy. At the time of this operation the petitioner was off from work some six months. Upon his return to work he was given a different job because of his physical condition. Thereafter the petitioner's condition grew progressively worse. His right leg had atrophied. Over the years the petitioner was under the care of Dr. Faye B. Murphey, Jr., of Chattanooga. Prior to his alleged injury on May 20, 1963, he was last examined by Dr. Murphey on April 25, 1963. This doctor's findings at the time of that examination are, in part, as follows:

"Chief complaint is that of numbness and tingling continuing in the right lower extremity with the tendency to collapse. Pain in the parirectal area especially on

pressure and much worse than on previous occasion. Occupation is that of making gauges at a bench, gets up and down, operates a machine like a lathe, or drill press.''

\* \* \* \* \* \*

''Physical examination confirms the above plus a considerable atrophy of the right calf, the right lower extremity and the quadriceps muscles, and there is sensory trouble as previously described.

''Impression at this time is an exacerbation of the fundamental processes in the lower sacral lumbar area, which previously was a hemongiomatous collection of veins, with cord and nerve root compression.''

Dr. Murphey further testified that, prior to the incident giving rise to this case, the petitioner's condition was getting progressively worse and the doctor had discussed with petitioner, as a last measure for the alleviation of petitioner's pain, the possibility of having a cordotomy performed, severing the sensory nerves to petitioner's right lower extremity. Dr. Murphey further testified:

''Q. Dr. Murphey, did Mr. Greeson tell you that he had fallen on many occasions before May 20th of '63?

''A. He had stated that his leg at times would give away from under him when he wasn't aware of it, and as to the exact number of falls he had, and on what occasions, I can't be certain about this. But, in any event, one of his major complaints was at times the unreliability of bearing weight on the legs, which would give away.''

The petitioner testified that shortly after going to work on May 20, 1963, he had been downstairs and started to

walk back up the steps and fell. He described this fall at several points in his testimony. At one point he stated:

"Just like I told Mr. Polston, I put my foot on the steps and my foot slips or my toe wouldn't hold me up or my leg didn't move, but it did not give away. It didn't collapse."

Later he gave the following testimony:

"Q. And isn't this what happened, Mr. Greeson, that your leg just didn't respond, didn't answer you?

"A. Just like I told them, it didn't respond or either my toe hit the step and I fell."

With reference to the cause of petitioner's fall, Dr. Murphey testified:

"May 20, 1963, he came into my office at the Medical Center on an emergency basis and stated that he had suffered a fall coming up the steps from his work at the plant.

"The fall was brought about by a sudden loss of feeling in his right leg."

The petitioner testified that in the latter part of 1962 he was walking across Market Street in Chattanooga, and his right leg "just didn't move for me, and I fell flat on my face." He admitted that on one or two other occasions his leg had failed to respond in the same way and he had fallen.

Another witness testified that the petitioner told him he fell because "it seemed as if he didn't have a leg, it didn't respond."

■ This evidence fully supports the finding of the Trial Judge that the petitioner fell because his leg failed

to respond. In other words, the evidence fully supports the finding that the petitioner's fall was caused by an idiopathic attack. The compensability of injuries so sustained is stated, as follows, in *Tapp v. Tapp*, 192 Tenn. 1, 236 S.W.2d 977:

"We are not by this opinion irrevocably committed to the proposition that all accidents resulting from epileptic seizures, or other idiopathic conditions, are compensable. There may be in many instances no causal connection whatever between the cause of the 'blackout' and the nature of the employment. But it seems reasonable to conclude, based upon the authorities cited, that where epilepsy, or other physical disturbances, suddenly and without expectation occur and contribute to cause an injury to an employee while at work the same should be held compensable, *provided there is present another hazard, incident to the employment which is generally known to exist and which is shown to be the immediate cause of the accident.*" (Emphasis supplied) 192 Tenn. at 9, 236 S.W.2d at 980.

In Tapp, the Court further stated:

"We have uniformly held that an award is justified only 'when there is * * * causal connection between the conditions under which the work is required to be performed and the resulting injury.' "

In the present case, the petitioner did not fall down a flight of stairs. He was in the act of ascending the stairs when his right leg failed to respond. He testified he caught one hand on the steps and caught the rail with his other hand. Here, the petitioner was able to break his fall by catching the railing with one hand. He did not "fall flat of his face" as he did on the occasion when his leg

failed to respond while walking on a level surface crossing Market Street.

1 Larson, Workmen's Compensation Law 12.11 (1964) states the rule with reference to falls occasioned by idiopathic conditions, as follows:

"The basic rule, on which there is now general agreement, is that the effects of such a fall are compensable if the employment places the employee in a position increasing the dangerous effects, of such a fall, such as on a height, near machinery or sharp corners, or in a moving vehicle. The currently controversial question is whether the effects of an idiopathic fall to the level ground or bare floor should be deemed to arise out of the employment."

In *Sherrill v. Cavalier Corporation* (unreported opinion filed July 27, 1959, in which the late Mr. Justice Swepston spoke for the Court), it was held that an injury sustained by an employee when he fell on a concrete floor as the result of a fainting spell was not compensable. In Sherrill, the Court pointed out that some compensation statutes merely require that the injury occur in the course of the employment to be compensable and do not require that it also arise out of the employment. Sherrill places Tennessee among those states denying recovery for the effects of an idiopathic fall to the level ground or bare floor.

A Workmen's Compensation case comes before this Court with the findings of the Trial Judge being the equivalent of a jury verdict approved by the Trial Judge. It is only when the evidentairy facts are undisputed and no conflicting inferences respecting the ultimate fact can be drawn therefrom that the question becomes one of law

for this Court. If reasonable minds might differ as to the conclusions to be drawn from undisputed facts, the conclusions reached by the Trial Judge are binding on this Court. *Hartwell Motor Co. v. Hickerson,* 160 Tenn. 513, 26 S.W.2d 153, *Lynch v. La Rue,* 198 Tenn. 101, 278 S.W.2d 85, *Knoxville Scenic Studios v. Hensley,* 202 Tenn. 548, 308 S.W.2d 368.

In *Lynch v. La Rue,* supra, the Court stated this rule, as follows:

"The record being as stated, the disposition to be made of this appeal is controlled by *Hartwell Motor Co., Inc. v. Hickerson,* 160 Tenn. 513, 519-520, 26 S.W.2d 153, wherein it is held that if the findings of the trial judge are supported by inferences which may reasonably be had from the evidence, though that evidence be reasonably capable of opposing inferences, a reviewing court will not disturb those findings." 106 Tenn. at 198, 278 S.W.2d at 87.

In our judgment, under the evidence contained in the record, the Trial Judge was justified in concluding that ·when petitioner's right leg failed to respond he would fall regardless of whether he was on level ground or on a step and that the steps did not contribute to cause the fall. Furthermore, under the evidence, the conclusion that the petitioner's injury was not made greater because of the steps is fully justified by the evidence. To paraphrase the language of the Tapp case, the evidence warrants the conclusion that no hazard incident to the employment is shown to be the immediate cause of the accident.

The judgment of the Trial Court is affirmed.

NOTE: This opinion was prepared by MR. JUSTICE ANDREW O. HOLMES and approved by all members of the Court prior to his death on July 24, 1965, and was released by the Court on July 30, 1965.