

FILED

**November 10, 2014**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 11:26 AM

## COURT OF WORKERS' COMPENSATION CLAIMS
### DIVISION OF WORKERS' COMPENSATION

**EMPLOYEE:  JOSEPH K. WILLIS**                    **DOCKET NO.  2014-05-0005**

**STATE FILE NO. 57982-2014**

**EMPLOYER:  ALL STAFF**                    **DATE OF INJURY:  JULY 30, 2014**

**INSURANCE CARRIER: RIVERPORT INSURANCE COMPANY**

## EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Joseph K. Willis (Employee) pursuant to Tennessee Code Annotated section 50-6-239.  Employee has requested an on the record determination pursuant to Rule 0800-02-21-.14(1)(c) of the Tennessee Comprehensive Rules and Regulations.  Upon review of Employee's request for expedited hearing and the entirety of the claim file, and in consideration of the applicable law, the Court finds that no additional information is needed to decide Employee's request for temporary disability and medical benefits and enters the following order denying same.

### Issues

Employee has filed a Request for Expedited Hearing seeking temporary disability and medical benefits.  Each of the issues presented is dependent upon the resolution of one central issue: whether Employee has pled a *prima facie* claim for a compensable work-related injury.  As set forth below, the undersigned finds that Employee has failed to present sufficient evidence which would entitle him to benefits.  All remaining issues are pretermitted.

### Evidence Submitted

The Court reviewed the entire case file in reaching its decision.  Specifically, the Court reviewed and relied upon the following:

1. Employee's Request for Expedited Hearing
2. Letter from Dr. David Moore dated October 28, 2013
3. Medical record of Dr. Moore dated August 29, 2013

1

4. Letter from Dr. Moore dated August 21, 2014
5. Medical record of Dr. Moore dated August 5, 2014
6. Recorded Statement of Joseph Willis
7. Claim denial letter dated August 5, 2014
8. Notice of Claim Denial dated August 5, 2014
9. Medical records form Maury Regional Medical Center

**History of Claim**

The claim history provided below is derived entirely from the claim file:

Prior to coming to work for Employer, Employee had a history of knee problems. A letter from his physician, Dr. David R. Moore, states that Employee underwent surgery on his left knee in October 2005, and underwent surgery on his left knee on June 12, 2007. Both surgeries corrected issues related to instability of the knee joints. Dr. Moore stated that Employee has had no problems with his knees since the surgeries and that Employee had normal alignment, range of motion and stability in both knees.

On July 30, 2014, Employee was squatting down to place a tie around a bale of excess compacted parts that had just exited a baling machine when he dislocated his kneecap. The following text taken from an interview between Employee and the claims adjuster provides the best explanation of the incident:

> ADJ: Okay. Alright tell me how the accident occurred…what happened?
>
> JW: Well the accident occurred [when] I was finishing up … I was working on that machine I told you about the bailer [sic]. I was finishing that up and I was walking around the back of it to finish up my last metal wire tie to eject the bail [sic] out and go take it back and weigh it and as I was finishing up tying it I was kind of squatted down like in a … like a duck walk position …
>
> ADJ: Uh huh.
>
> JW: I was real low to the ground and as I went to get up and turn I just felt a real sharp quick pop in my knee and on me and it hurt and I fell to the ground and I saw my knee pop out of place and all I could do was just pop it in place myself and I kind of crawled across the floor until I found somebody and then someone luckily saw me and they got my supervisor to come help me.
>
> ADJ: Okay.
>
> JW: And …

ADJ: Were you carrying anything when you were walking around the back of the bailer [sic]?

JW: No I wasn't I was just … at that point I was just kind of squatted down with no get up and I guess I just got turned around too awkwardly or to [sic] sharp or something and it just popped out.

On August 5, 2014, Employee presented to Dr. Moore with complaints of left-knee pain. The treatment notes show that Employee reported developing the pain and instability "after planting and twisting, after a twisting injury, and after a work injury." The notes further indicate that Employee's problems began when he "attempted to squat down while at work" and then "attempted to twist while coming out of the squatting position and he felt something pop to [sic] his left knee." Employee then looked down and saw that his kneecap was dislocated. Dr. Moore ordered an MRI to determine if the dislocation had caused any damage to the knee cartilage.

Dr. Moore released Employee to commence limited duty work on August 5, 2014. Dr. Moore imposed restrictions that allowed Employee to only perform a "sit down job" pending the results of an MRI. He also opined that Employee's injury was likely work-related and that further surgery might be required to stabilize his knee.

In an August 21, 2014 letter, Dr. Moore wrote the following:

It has come to my attention that there is some question regarding the work-related nature of Mr. Joseph Willis's traumatic injury that he sustained to his left knee. I previously performed an open medial patellofemoral imbrication to his bilateral knees for patellofemoral instability while he was in high school. He has done quite well over the last six to eight years with no additional episodes of instability. The patient remains quite consistent in stating that prior to his work related fall he had no symptoms. My impression is that his fall at work did directly cause his most recent patellar dislocation.

Employer denied the claim as non-work related. Employee filed a petition for benefit determination and the instant motion seeking temporary disability and medical benefits.

**Employee's Contentions**

Employee alleges that he has suffered a compensable workplace injury and is entitled to temporary disability and medical benefits.

**Employer's Contentions**

Employer denies that the claim is work related but, instead, maintains that the injury is idiopathic in nature and, therefore, not compensable.

**Findings of Fact and Conclusions of Law**

*Standard Applied*

When determining whether to award benefits, the Judge must decide whether the moving party is likely to succeed on the merits at trial given the information available. *See generally, McCall v. Nat'l Health Care Corp.*, 100 S.W. 3d 209, 214 (Tenn. 2003). In a workers' compensation action, pursuant to Tennessee Code Annotated section 50-6-239(c)(6), Employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence. Employee must show the injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13).

*Factual Findings*

The Court finds that the Employee dislocated this kneecap on July 30, 2014, when he rose from a squatting position after placing a metal tie on a bale of compressed parts. The Court finds that Employer had actual notice of the claim as Employee's supervisor assisted in his immediate care. The Court finds that there was no special hazard or condition of the work that attributed to Employee's injury.

*Application of Law to Facts*

Employee has raised several disputes for adjudication in his request for expedited hearing. At the heart of these disputes lies the central issue of whether Employee has presented sufficient information to establish a prima facie case of a compensable workers' compensation injury. If this issue is determined in Employee's favor, the derivative disputed issues will follow.

In order to receive temporary workers' compensation benefits in a pretrial setting, an employee must show that he is likely to prevail at a trial on the merits of his claim. *See McCall*, 100 S.W. 3d at 214. Under Tennessee Workers' Compensation law, an "injury" or "personal injury" by accident is compensable whenever "the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(13) (2014). "An injury arises primarily out of and in the course and scope of employment only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" *Id.* (internal quotations omitted).

4

In Tennessee, there is no formula which will clearly define the line between accidents and injuries which arise out of and in the course of employment and those which do not. Instead, each case must be decided with respect to its own attendant circumstances and not by resort to some formula. Bell v. Kelso Oil Co., 597 S.W.2d 731, 734 (Tenn.1980).

Under Tennessee Workers' Compensation law, it is well established that the mere presence in the workplace at the time an injury occurs will not result in the injury being considered as arising out of the employment. Instead, the injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the nature of the work. *Thornton v. RCA Serv. Co.*, 221 S.W.2d 954, 955 (Tenn. 1949). For example, an employee who suffered from a pre-existing spinal condition which caused his legs to tire and go numb was denied recovery when he fell at work. *See Greeson v. Am. Lava Corp.*, 392 S.W.2d 931, 935 (Tenn. 1965). In fact, "Tennessee courts have consistently held that an employee may not recover for an injury occurring while walking unless there is an employment hazard, such as a puddle or step, in addition to the injured employee's ambulation." *Wilhelm v. Krogers*, 235 S.W.3d 122, 128-29 (Tenn. 2007). Furthermore, idiopathic injuries—those with an "unexplained origin or cause"—do not arise out of the work unless there is "some condition of the employment that presents a peculiar or additional hazard." *Veler v. Wackenhut Serv's, Inc.*, 2011 Tenn. LEXIS at *3 (Tenn. Workers Comp. Panel Jan. 28, 2011) (Holding that an employee's knee injury suffered while rising from his chair to retrieve files on a shelf at work was not compensable).

In this case, Employee dislocated his kneecap when he stood from a squatting position after checking a baling machine at work. In his statement, Employee admitted that he was not lifting anything when the injury occurred. Employee also has not alleged that tying up the bale of parts required him to maneuver his body in an unusual manner or that there was a hazard on the floor in the area around the baler. Instead, Employee alleges that he simply stood up, twisted the wrong way, and his kneecap dislocated. While the incident is certainly unfortunate, the undersigned finds that the employment did not contribute at least 50% in causing the injury. Employee could have suffered the same injury if he had squatted anywhere. The fact that the injury occurred while Employee was at work does not convert it into a workers' compensation injury. For these reasons, the Court finds that Employee is unlikely to succeed at a hearing on the merits of the case based on the facts presented at this time. The Court holds that Employee's injury is idiopathic in nature and, therefore, not compensable.

**IT IS, THEREFORE, ORDERED** as follows:

1. Employee's request for temporary disability and medical benefits is denied.

2. **This matter is set for Initial Hearing via teleconference on November 17, 2014, at 10 a.m. (CST). Instructions on how to participate in the teleconference are included below.**

5

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven (7) business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Division by email to WCCompliance.Program@tn.gov no later than the seventh (7th) business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**Entered on this the 10th day of November, 2014.**

_____

**Joshua Davis Baker**
**Workers' Compensation Judge**

## INITIAL HEARING:

An Initial Hearing has been set with Judge Joshua Davis Baker, Court of Workers Compensation Claims. You must call (615) 741-2113 or toll free at (855) 874-0474 to participate in the Initial Hearing. Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Standard Time (CST).

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Request for Appeal upon the opposing party.

6

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 24th day of October, 2014.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Gene Hallworth | | | | | X | |
| Duane Willis | | | | | X | dwillis@morganakins.com |
| Richard Clark | | | | | X | rclark@morganakins.com |

Joshua Davis Baker
Workers' Compensation Judge