FILED

**April 15, 2015**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 8:27 AM



# COURT OF WORKERS' COMPENSATION CLAIMS
# DIVISION OF WORKERS' COMPENSATION

EMPLOYEE: JAMES LAWSON

EMPLOYER: MID-SOUTH TRANSPORT

DOCKET #: 2014-02-0067
STATE FILE #: 98697-2014
DATE OF INJURY: 12/16/2014

INSURANCE CARRIER: NATIONAL INTERSTATE INS.

## EXPEDITED HEARING ORDER

THIS CAUSE came before the undersigned Workers' Compensation Judge on March 30, 2015, upon the Request for Expedited Hearing filed by Employee, James Lawson (Mr. Lawson), on February 25, 2015, pursuant to Tennessee Code Annotated section 50-6-239 to determine if Employer, Mid-South Transport (Mid-South) is obligated to provide additional temporary disability benefits, and upon two Requests for Expedited Hearing filed by counsel for Mid-South to compel discovery.

## ANALYSIS

### Issues

1. Whether Mr. Lawson submitted sufficient evidence to prove he would likely succeed on the merits of his claim for medical and temporary disability benefits.
2. Whether this Court should grant Mid-South's Motion to compel Mr. Lawson to attend a deposition.
3. Whether this Court should grant Mid-South's Motion to compel Mr. Lawson to attend an IME.
4. Whether Mid-South is entitled to an attorney fee.

### Evidence Submitted

The only witness was Mr. Lawson.

The Court designated the following as the technical record:

- Petition for Benefit Determination
- Dispute Certification Notice
- Request for Expedited Hearing

1

- Employer's Response to Expedited Hearing

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings as allegations unless established by the evidence.

The Court admitted the following into evidence:

- Exhibit 1: Mr. Lawson's Affidavit dated January 26, 2015 (2 pages)
- Exhibit 2: Nova Medical Center Work Status Form (1 page)
- Exhibit 3: Dr. Fred Knickerbocker-Medical Notes (16 pages)
- Exhibit 4: Dr. Patrick Riggins-Medical Notes (4 pages)
- Exhibit 5: Job Application (2 pages)

## Stipulations of the Parties

The Parties stipulated the following facts:

- Mr. Lawson's average weekly wage is $695.34, and his compensation rate is $463.56.

## History of Claim

Mr. Lawson, a former truck-driver for Mid-South, alleges an injury to his left knee on December 16, 2014, as he stepped down from his truck. Mr. Lawson previously provided notice of a work injury to Mid-South on August 1, 2014, for an injury to his left calf and knee as he attempted to get into a truck. For the August 1, 2014 injury, Mr. Lawson treated with Drs. Fred Knickerbocker and Patrick Riggins.

Dr. Fred Knickerbocker saw Mr. Lawson several times for the August 1, 2014 injury. Mr. Lawson's main complaint was knee pain. During the course of treatment, Dr. Knickerbocker discovered that Mr. Lawson had a congenital bipartite patella (Exhibit 3, page 11). Mr. Lawson underwent injections and physical therapy but continued to complain of pain and clicking in his knee (Ex. 3, page 11). Dr. Knickerbocker could not find Mr. Lawson's pain generator, and as a result, recommended a second opinion.

Dr. Riggins saw Mr. Lawson on November 19, 2014, for a second opinion. Dr. Riggins took Mr. Lawson's history, noted his prior treatment, and examined his knee (Exhibit 4, page 1). Dr. Riggins' impression was a status post left calf strain, status post left knee strain with pain in the lateral aspect possibly coming from a grating or snapping Iliotibial (IT) band, and chondromalacia of the knee (Ex. 4, page 2). Dr. Riggins directed Mr. Lawson to return to Dr. Knickerbocker or another physician for a cortisone injection to the knee, and Xylocaine and steroid injections directly over the IT band on the lateral joint line. Dr. Riggins did not recommend surgery, but noted he would consider ordering a repeat MRI if Mr. Lawson's knee pain worsened or if a doctor could document recurrent swelling or effusion (Ex. 4, page 3).

Mr. Lawson returned to Dr. Knickerbocker on December 4, 2014, and reported mild pain in the medial side of the left knee with popping and sharp pain in the lateral side (Ex. 3, page 12). Dr. Knickerbocker injected Mr. Lawson's knee (Ex. 3, page 13). On December 11, 2014, Mr. Lawson returned to Dr. Knickerbocker. Dr. Knickerbocker noted the injection did not alleviate Mr. Lawson's symptoms (Ex. 3, pages 14-15). Dr. Knickerbocker could not find any objective reason for Mr. Lawson's complaints. He returned Mr. Lawson to work with no restrictions as long as he drove an automatic truck (Ex. 3, page 15). Mr. Lawson returned to work for Mid-South.

On December 16, 2014, Mr. Lawson delivered a load to Electrolux in Memphis, Tennessee. As he climbed down from his truck using a three point stance, his left knee bent backwards when he placed his full weight on it. The next morning he reported the alleged injury to his supervisor, who sent him to Nova Medical Centers (Nova).

Dr. Bonnie Randolph with Nova saw Mr. Lawson on December 17, 2014. Dr. Randolph recorded Mr. Lawson's description of the injury as, "Patient states that he was stepping out of his truck when his left knee bent backwards." She diagnosed left knee internal derangement, placed Mr. Lawson on light-duty restrictions through December 23, 2014, and recommended follow-up services (Exhibit 2).

After seeing Dr. Randolph, Mr. Lawson returned to his home in Kingsport, Tennessee. Mid-South did not provide any additional medical treatment after December 17, 2014. Mid-South terminated Mr. Lawson on December 31, 2014, by letter and listed voluntary resignation as the reason for the termination.

Mr. Lawson worked as a truck driver for a different employer from January 29, 2015, until March 17, 2015.

Mr. Lawson filed a Petition for Benefit Determination (PBD) for temporary disability benefits and medical benefits. The parties participated in Alternative Dispute Resolution (ADR) but did not reach an agreement about the issues.

On February 12, 2015, Mid-South's attorney filed a PBD to compel Mr. Lawson to attend an independent medical examination (IME). On January 29, 2015, Mid-South's attorney filed another PBD to compel Mr. Lawson to attend a deposition. The parties participated in ADR but did not reach an agreement on the discovery issues.

The parties presented all identified issues to the Court during an Expedited Hearing on March 30, 2015.

**Mr. Lawson's Contentions**

Mr. Lawson stated that he suffered a compensable injury when his knee bent backwards on December 16, 2014. He requested medical and temporary disability benefits. He acknowledged he continued to experience left leg symptoms from his August 1, 2014 injury, up to the December 16, 2014 alleged injury.

3

Concerning the IME, Mr. Lawson felt Mid-South tried to bully him into seeing Dr. Knickerbocker. He wanted to see a doctor from a panel of physicians for the December 16, 2014 injury instead of returning to Dr. Knickerbocker for an IME. He also stated that the nurse case manager and Dr. Knickerbocker were "pals" and "best friends," and this kept him from getting appropriate care.

Mr. Lawson did not object to providing deposition testimony if the Court ordered it.

## Mid-South's Contentions

Mid-South contended that Mr. Lawson suffered an idiopathic injury. It further averred that Mr. Lawson has pre-existing medical conditions and the December 16, 2014 injury did not advance or exacerbate them.

Mid-South requested an IME pursuant to Tennessee Code Annotated section 50-6-204(d) 2014 and Rule 35 of the Tennessee Rules of Civil Procedure. Mid-South contended it is entitled to an IME to address whether Mr. Lawson's left knee condition is acute or pre-existing. It further asserted that Dr. Knickerbocker would be the best doctor to perform the evaluation since he treated Mr. Lawson for his August 1, 2014 injury. Mid-South requested an order compelling Mr. Lawson to attend an IME with Dr. Knickerbocker as soon as possible.

Mid-South requested a deposition according to Tennessee Rules of Civil Procedure (T.R.C.P.), Rule 27. As mentioned previously, Mr. Lawson did not object to the deposition if the Court ordered it.

Mid-South requested the Court to award an attorney fee in the amount of $390.00 due to the time required to bring its discovery motions pursuant to T.R.C.P. 37.

## Findings of Fact and Conclusions of Law

### Standard Applied

"The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor employer." Tenn. Code Ann. 50-6-116 (2014). Tennessee Code Annotated section 50-6-239(c)(6) provides that, "[u]nless the statute provides for a different standard of proof, at a hearing, the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence." Tenn. Code Ann. section 50-6-239(c) (2014). A different standard of proof exists for the issuance of interlocutory orders at expedited hearings than the standard of proof required at compensation hearings. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063 (Tenn. Work. Comp. App. Bd., March 27, 2015). A workers' compensation judge may enter an interlocutory order for medical or temporary benefits upon a determination that the injured employee would likely prevail at a hearing on the merits. Tenn. Code Ann. 50-6-239(d)(1) (2014); *McCall v. Nat'l Health Care Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003).

4

*Factual Findings*

The evidence establishes that Mr. Lawson injured his knee on August 1, 2014. Dr. Knickerbocker is the treating physician for Mr. Lawson's August 1, 2014 injury. When Mr. Lawson returned to work from that injury, he continued to suffer symptoms. On December 16, 2014, his knee bent backwards while getting out of his truck. Mr. Lawson did not prove any hazard incident to his employment that caused his knee to bend backwards. Mid-South did not provide Mr. Lawson with a panel of physicians for the December 16, 2014, alleged work injury. Mid-South only provided initial treatment at Nova. Mid-South terminated Mr. Lawson on December 31, 2014. Mr. Lawson worked for a different employer from January 29, 2015, until March 17, 2015.

*Application of Law to Facts*

The first issue in this case is whether Mr. Lawson submitted sufficient evidence to prove he would likely succeed on the merits of his claim for medical and temporary disability benefits. Tennessee Code Annotated Section 50-6-102(13)(2014) defines injury as follows:

> "Injury" or "personal injury" mean an injury by accident, a mental injury, occupational disease including diseases of the heart, lung and hypertension, or cumulative trauma conditions including hearing loss, carpal tunnel syndrome or any other repetitive motion conditions, arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee; provided, that:
>
> (A)    An injury is "accidental only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence, and shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment;
>
> (B)    An Injury "arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes;
>
> (C)    An injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing death, disablement or need for medical treatment, considering all causes.

Mr. Lawson alleged his knee buckled and he injured his leg when he stepped down out of his truck.

The facts in this case are similar to the facts in *Dickerson v. Sarl*, 2007 Tenn. LEXIS 916, (Tenn. Oct. 18, 2007). In *Dickerson*, the injured employee used a handrail to ascend stairs, and as he was doing so his leg buckled. *Id.* at 2. Even though the employee in *Dickerson* did not actually fall, the court used the term "idiopathic fall" and noted the following:

> An "idiopathic fall" is said to occur when the fall is caused by a condition of unknown origin. The cases in which this issue arises generally involve either an unexplained seizure or fainting episode, *e.g. Sudduth v. Williams*, 517 S.W.2d 520 (Tenn. 1974), or a knee giving way without explanation, *e.g. Greeson v. Am. Lava Corp.*, 216 Tenn. 461, 392 S.W.2d 931 (Tenn. 1965). An injury caused by such a fall does not arise from the employment. So, an unexplained fall onto a bare floor is not compensable. *Sudduth*, 517 S.W.2d at 523. However, if the work environment contains an additional risk element, for example, dangerous machinery or heights, that enhances the injury that would have otherwise occurred, the resulting injury will be compensable. *See Phillips v. A&H Constr. Co., Inc.*, 134 S.W.3d 145, 150 (Tenn. 2004).

*Dickerson*, 2007 Tenn. LEXIS 916 at 5-6.

Mr. Lawson has not established that there was an additional employment related risk element involved that enhanced his injury. He simply placed his weight on his leg as he would do while walking or negotiating stairs. Based upon all the evidence submitted, Mr. Lawson has failed to prove he is likely to succeed on the merits of the claim. Therefore, this Court hereby denies Mr. Lawson's request for medical and temporary total disability benefits at this time.

The remaining issue is whether this Court should grant Mid-South's motion to compel Mr. Lawson to attend an IME with Dr. Knickerbocker. Mid-South made a request pursuant to statute and also the Rules of Civil Procedure.

Tennessee Code Annotated section 50-6-204(d)(1)(2014) states:

> The injured employee must submit to examination by the employer's physician at all reasonable times if requested to do so by the employer, but the employee shall have the right to have the employee's own physician present at the examination, in which case the employee shall be liable to the employee's physician for that physician's services.

Tennessee Code Annotated section 50-6-204(d)(8)(2014) states that the request for examination must be a "reasonable request." There is nothing unreasonable about the IME request in this case.

6

Mid-South relies on *Overstreet v. TRW Commercial Steering Division*, 253 S.W.3d 626 (Tenn. 2008), and *Myers v. Vanderbilt Univ.*, 2010 LEXIS 443 (W.C. Panel 2010) to support its position on entitlement to an IME. Tennessee courts have consistently held that employers are entitled to a reasonable examination by their doctor. Mid-South has proven that it is entitled to an IME because the issue of Mr. Lawson's leg injury remains.

However, this Court has found that Dr. Knickerbocker is the "treating physician" for Mr. Lawson's August 1, 2014 injury. As such, Dr. Knickerbocker is placed in an untenable position if he serves as the employer's physician for the present injury. It seems he cannot serve as the "employer's physician" for his subsequent alleged injury while at the same time serving as the treating physician regarding his first injury. Ms. Lawson shall attend an IME with Mid-South's designated physician, but that said physician should be someone other than Dr. Knickerbocker.

In its Response Brief, Mid-South requested attorney fees pursuant to T.R.C.P. Rule 37.01(4). This Court may award attorney fees to a party that brings a successful Motion to Compel Discovery if an opposing party fails to answer a question during a deposition, fails to answer an interrogatory, or fails to respond to a request for inspection. T.R.C.P. Rule 37.01(2). Mid-South failed to establish that Mr. Lawson refused to answer a question during a deposition. Rule 37.01 does not mention IME requests are subject to an attorney fee. Therefore, Mid-South's request for an attorney fee is denied.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Lawson's claim against Mid-South or its workers' compensation carrier for the requested temporary disability and medical benefits is denied at this time.

2. Mr. Lawson shall attend a deposition set by counsel for Mid-South within thirty (30) days of this order.

3. Mr. Lawson shall attend an IME with employer's doctor.

4. Mid-South's request for attorney fees is denied.

5. This matter is set for Initial Hearing on June 4, 2015, at 2:00 p.m. eastern time.

**ENTERED this the 15th day of April 2015.**

**BRIAN K. ADDINGTON**
**Workers' Compensation Judge**

7

<u>Initial Hearing</u>:

An Initial Hearing has been set with Judge Brian K. Addington, Court of Workers Compensation. You must call 865-594-6538 or toll free at 855-543-5044 to participate in the Initial Hearing.

Please Note: <u>You must call in on June 4, 2015, at 2:00 p.m. Eastern Time to participate.</u> Failure to call in may result in a determination of the issues without your further participation.

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal".

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 15th day of April, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| James Lawson | | | | | x | southpawed1@yahoo.com |
| Allen Callison, Esq. | | | | | x | acallison@eraclides.com |

PENNY SHRUM
CLERK OF THE COURT

9