FILED

February 8, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 10:11 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | |
|---|---|
| MARGO RATLIFF, <br>         **Employee,** <br> **v.** <br> **HOUSE-HASSON HARDWARE CO., INC.** <br>         **Employer,** <br> **And** <br> **AMERICAN ZURICH INSURANCE CO.,** <br>         **Carrier.** | **Docket No.: 2015-03-0463** <br><br> **State File Number: 51258-2015** <br><br> **Judge Pamela B. Johnson** |

## EXPEDITED HEARING ORDER
## DENYING MEDICAL AND TEMPORARY DISABILITY BENEFITS
### *(REVIEW OF THE FILE)*

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the Employee, Margo Ratliff, filed November 30, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issues are: (1) whether the Employer, House-Hasson Hardware Company, Incorporated, must provide Ms. Ratliff past and/or future medical benefits; and (2) whether House-Hasson must pay Ms. Ratliff past and/or ongoing temporary disability benefits, and if so, in what amount. For the reasons set forth below, the Court finds that Ms. Ratliff failed to establish that she is likely to prevail at a hearing on the merits on the central legal issues. Accordingly, her request for temporary disability and medical benefits is denied.[1]

### History of Claim

Ms. Ratliff is a forty-eight-year-old resident of Knox County, Tennessee. House-Hasson employed Ms. Ratliff as a receiving clerk.

On June 26, 2015, Ms. Ratliff walked up steps at House-Hasson when her knee

---

[1] A complete listing of the technical record and documents considered by the Court is attached to this Order as an appendix.

1

buckled and she fell. (T.R. 1.) In an Incident Report signed July 7, 2015, by Ms. Ratliff, she stated, "Coming back from break. Walked through the metal detectors; going up 4 steps and at the top step the left knee buckled." (Ex. 12.) When describing the exact location where the accident occurred, Ms. Ratliff noted, "At the top of the steps after you come through the metal detectors; coming toward the warehouse." *Id.*

In her recorded statement taken July 13, 2015, Ms. Ratliff described the June 26, 2015 incident, stating:

> I was coming back in the building from my break. It was around 9:45 a.m. on June 26, 2015. As I was walking up the steps, when I stepped on the top step my knee popped and it buckled and because I was walking up the steps, I could not catch myself and I fell.

(Ex. 11, p. 2.) Ms. Ratliff also confirmed the steps were not wet, there were no problems with the steps, and there was sufficient lighting. (Ex. 11, p. 3.)

In a written statement dated August 28, 2015, Ms. Ratliff stated, "I was walking up stairs [and] my knee buckled [and] I fell on concrete." (Ex. 2.)

Vincent DeMaria, a House-Hasson employee, testified by Affidavit that he witnessed Ms. Ratliff's fall on June 26, 2015. (Ex. 3.) Mr. DeMaria described the weather on the day in question as sunny and clear. *Id.* He further testified that the fall occurred on the top landing of the steps leading from the parking lot into the facility. *Id.* Ms. Ratliff's fall occurred as she returned from the parking lot, after her work-allowed break. *Id.* Mr. DeMaria indicated Ms. Ratliff was not performing any work task at the time of her injury, there was nothing on the stairs or landing that caused her to fall, and Ms. Ratliff did not strike her knee on any object as she fell. *Id.* Mr. DeMaria stated that, after falling to the ground, Ms. Ratliff said "her knee just gave out, she had been having problems with her knee from a prior injury, and she was in pain from her left knee giving out." *Id.*

Rural Metro Ambulance transported Ms. Ratliff to the University of Tennessee Medical Center (UTMC). *Id.* Ms. Ratliff did not provide the records from UTMC or Rural Metro Ambulance.

Ms. Ratliff previously injured her left knee in 1994 in a motor vehicle accident. (Ex. 10.) She underwent arthroscopic surgery to the left knee in 1998. *Id.*

In 2010, her knee popped while pulling a pallet. *Id.* She received treatment from Dr. William Hovis, who performed a left knee arthroscopic surgery with chondroplasty and a lateral retinacular release. *Id.* Dr. Hovis placed Ms. Ratliff at maximum medical improvement in April 2011 and assigned a two percent lower extremity impairment/one

percent whole person impairment. *Id.* Ms. Ratliff returned to see Dr. Hovis with ongoing symptoms and received aspirations and injections by Dr. Hovis approximately every three months. *Id.*

In August 2012, Ms. Ratliff sought treatment from Dr. William Johnson of Blount Orthopaedic Associates. She reported she continued to work but remained symptomatic with activities with worsening of symptoms after standing at work all day. *Id.* Dr. Johnson reviewed the April 6, 2010 surgery report and noted:

> She was noted to have at that time multiple small intra-articular loose bodies which were removed. The medial meniscus was noted to be intact. Crucial ligaments were intact. The lateral meniscus was intact. There was early but definite degenerative arthritis in all three compartments in the prominent medial plica. The patient had prominent superior medial plica and some lateral tracking of the patella with chondromalacia of the patella noted. This was treated with chondroplasty and a lateral retinacular release was performed.

*Id.*

On July 28, 2015, Ms. Ratliff returned to Dr. Johnson with complaints of left knee pain. *Id.* Dr. Johnson noted:

> She had visible bone at the joint on her last arthroscopy 2 years ago. She has had intermittent symptoms but recently had a popping sensation that occurred at work that caused her to fall. She was taken to the emergency room where radiographs show[ed] not acute changes but significant arthritis.

*Id.* Dr. Johnson performed a physical examination and reviewed radiographs of the left knee, which showed "near bone-on-bone apposition of the left knee" and "tricompartmental degenerative changes." *Id.* Dr. Johnson diagnosed advanced degenerative arthritis of the left knee."

Dr. Johnson further opined:

> I do feel given the meniscal tear and localized arthritis that she has that this is a posttraumatic problem and has progressed significantly in the past 2 years with now near bone-on-bone apposition of the knee.

*Id.* Dr. Johnson did not recommend conservative treatment or a MRI scan because of the visible arthritis shown clinically and by x-rays. *Id.* Dr. Johnson further recommended against an arthroscopic procedure. *Id.* Dr. Johnson indicated a left knee arthroplasty was

Ms. Ratliff's best option. *Id.*

On August 20, 2015, Dr. Johnson responded to a letter inquiring as to causation, opining as follows:

1. *Do you have an opinion as to whether Ms. Ratliff suffered a work-related injury on June 26, 2015, when she claims to have fallen while working down the stairs? If so, do you have an opinion what, if any, permanent medical conditions Ms. Ratliff sustained as a result of her alleged work injury on June 26, 2015.*

A. This patient has an underlying knee problem that dates back at least to 2010 where there was a work injury. She has had previous meniscal tear and resection. I did not see evidence after her recent visit that she sustained any new injuries but rather had an aggravation of an underlying arthritis in her knee. I do not feel she sustained any new medical conditions but had an exacerbation of a previous condition.

2. *With respect to Ms. Ratliff's most recently alleged work injury on June 26, 2015, do you have an opinion whether the events caused her to suffer permanent aggravation of her preexisting condition and/or anatomical change in her left knee pathology? If so, can you identify the findings from the recent MRI scan or your personal evaluation of Ms. Ratliff which support that opinion?*

A. It did appear on this MRI that there may be a small radial-type tear involving the free edge of the body of the medial meniscus. Having seen this knee arthroscopically in the past with a complex tear of the medial meniscus, I feel this may have occurred in her recent incident but is not adding really to the pathology in her knee as degenerative meniscal tears will certainly occur with ongoing arthritic pattern. I do feel though with this injury there may have been some articular cartilage impact that has intensified her knee symptoms and permanently aggravated the underlying preexisting condition of degenerative arthritis of the knee.

3. *Do you have an opinion whether Ms. Ratliff's work injury on June 26, 2015, aggravated her preexisting condition such as it expedited or hastened her knee for a total replacement of the left knee?*

A. I do feel, as noted above, that she had a significant traumatic event to the knee on this date and it is well known that arthritic knees do not respond as well to injuries of this type as would a normal knee. As her symptoms have become intensified and persistent, I would say that the injury of June 26, 2015, has

4

expedited or hastened her need to proceed with total knee replacement.

(Ex. 7 (italics in original.))

On August 21, 2015, House-Hasson's carrier filed a Notice of Controversy and indicated, "The proposed knee surgery is not causally related [to the 6/26/15 work injury] based on Dr. Johnson's letter of 8/18/15." (Ex. 5.)

Ms. Ratliff filed a Petition for Benefit Determination on August 25, 2015, seeking medical and temporary disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on October 7, 2015. Ms. Ratliff filed a Request for Expedited Hearing on November 30, 2015, asking the Court to issue a ruling based on a review of the file without an evidentiary hearing.

In her written statement, Ms. Ratliff alleged she spoke to Freddy Rarzo, an adjuster for House-Hasson's current carrier, Travelers' Insurance, who agreed to pay the June 26, 2015 medical bills only. However, Travelers' Insurance denied any claim for a new injury due to her previous left knee injury. House-Hasson's Human Resource personnel, Betty Kidd, then contacted an adjuster for Hanover Insurance, House-Hasson's prior carrier for her 2010 work injury, who authorized the appointment with Dr. Johnson and the August 15, 2015 MRI. Tana Stroupe, the adjuster for Hanover Insurance, contacted Ms. Ratliff on August 21, 2015, to advise the MRI showed a new tear and Hanover Insurance denied treatment for the new left knee injury. Ms. Ratliff argued she sustained a work injury, whether her left knee injury was due to a new injury or resulted from her previous injury. She asked for medical treatment to repair her left knee and temporary disability benefits while off work recovering from the recommended left knee replacement. Ms. Ratliff indicated she last worked July 22, 2015.

In its Response to the Request for Expedited Hearing, House-Hasson contested Ms. Ratliff's June 26, 2015 claim on the bases that the injury was idiopathic in nature and her current injury was a direct and natural consequence of her previous injury. On June 26, 2015, Ms. Ratliff, while ascending stairs, heard her knee pop or felt it give way. She fell to flat ground. There was nothing peculiar or additionally hazardous about the stairs where the fall occurred. The treating physician, Dr. Johnson, opined that there was significant arthritis, but no acute changes. The new symptoms related to the continuing degenerative arthritic changes from Ms. Ratliff's previous injury and surgery. Dr. Johnson identified the injury as advanced degenerative arthritis. House-Hasson asserted Ms. Ratliff did not provide evidence to show that she is likely to succeed at a hearing on the merits.

5

## Findings of Fact and Conclusions of Law

The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

To be compensable under Workers' Compensation Law, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(13) (2015). The term "injury" is defined as "an injury by accident . . . or cumulative trauma condition . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.*

In the present case, House-Hasson denied Ms. Ratliff's claim on two bases: first, her fall and resulting injury was idiopathic in nature; and second, her fall and resulting injury were the direct and natural consequence of her previous injury and left knee condition. This Court will first address idiopathic falls.

An "idiopathic fall" occurs when a condition of unknown origin causes the fall. *Dickerson v. Sarl*, No. E2006-02144-WC-R3-WC, 2007 Tenn. LEXIS 916, at *5-7 (Tenn. Workers' Comp Panel Oct. 18, 2007). Generally, cases with idiopathic falls involve an unexplained seizure or fainting episode, *e.g. Sudduth v. Williams,* 517 S.W.2d 520 (Tenn. 1974), or a knee giving way without explanation, *e.g. Greeson v. Am. Lava Corp.,* 392 S.W.2d 931 (Tenn. 1965). An injury caused by such a fall does not arise from the employment. *Dickerson, supra.* So, an unexplained fall onto a bare floor is not compensable. *Sudduth,* 517 S.W.2d at 523. However, if the work environment contains an additional risk element that enhances the injury that would have otherwise occurred, the resulting injury is compensable. *See Phillips v. A&H Constr. Co., Inc.,* 134 S.W.3d 145, 150 (Tenn. 2004). In other words, a fall is not idiopathic if caused by some hazard or condition associated with the employment, and injuries caused by such a fall are compensable. *See Hankins v. Camel Mfg. Co.,* 492 S.W.2d 212 (Tenn. 1973).

In *Dickerson v. Sarl,* supra, the employee testified that there were no slick spots, loose boards, or similar hazards on the stairs when he fell. *Dickerson v. Sarl,* 2007 Tenn. LEXIS 916, at *2. Either the employee stumbled, or his knee gave way. *Id.* The record contained several descriptions of the sequence of events, which varied from each other in

6

significant detail. The Panel noted, "A finding by the trial court that Employee had struck his leg on one or more steps during his fall would have supported, though not mandated, a finding of compensability." *Id.* at *7. However, the Trial Court did not accept that particular version of events. *Id.* The Trial Court found the fall to be idiopathic and thus not compensable. *Id.* The Panel, based upon an independent review of the record, found the evidence did not preponderate against the Trial Court's finding. *Id.*

In *Greeson v. Am. Lava Corp.,* supra, the employee also fell while ascending some stairs. *Greeson v. Am. Lava Corp.,* 392 S.W.2d at 934. "[H]e caught one hand on the steps and caught the rail with his other hand." *Id.* The Trial Court noted that the employee did not fall down the stairs or "flat on his face" and held that his injuries did not arise from his employment. *Id.*

In the present case, while ascending concrete steps, Ms. Ratliff's left knee popped and buckled and she fell on concrete at the top landing of the steps. She indicated in her recorded statement the steps did not contribute to her injury. She did not identify any defect or hazard on the steps. After careful consideration, and based upon the record as a whole, this Court finds that Ms. Ratliff's fall was not caused by some hazard or condition associated with her employment at House-Hasson.

In light of this Court's finding of an idiopathic fall, it is not necessary to address the second defense raised by House-Hasson on the issue of whether Ms. Ratliff's fall and resulting injury were the direct and natural consequence of her previous injury and left knee condition.

Therefore, as a matter of law, Ms. Ratliff has not come forward with sufficient evidence from which this Court concludes that she is likely to prevail at a hearing on the merits. Her requests for medical and temporary disability benefits are denied at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Ratliff's claim against House Hasson Hardware and its workers' compensation carrier for the requested medical and temporary disability benefits is denied at this time.

2. This matter is set for an Initial (Scheduling) Hearing on **Tuesday, March 29, 2016,** at **2:00 p.m. Eastern Time**.

**ENTERED** this the 8th day of February, 2016.

_Pamela B Johnson_

**HON. PAMELA B. JOHNSON**
**Workers' Compensation Judge**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with Judge Pamela B. Johnson. You must call 865-594-0091 or toll-free 855-543-5041 to participate in the Initial Hearing.

Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within seven business days_ of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

The Court designated the following as the Technical Record:

- Petition for Benefit Determination, filed August 25, 2015;
- Dispute Certification Notice, filed October 7, 2015;
- Request for Expedited Hearing , filed November 30, 2015;
- Motion to Quash or to Extend Expedited Hearing Response Requirements, filed December 1, 2015;
- Response to Employee's Request for Expedited Hearing, filed December 7, 2015; and
- Order Denying Motion to Quash and Order Denying Motion to Extend Expedited Hearing Response Requirements, entered December 17, 2015.

The Court reviewed the entire case file in reaching its decision. Specifically, the Court reviewed and relied upon the following documents, marked as exhibits for ease of reference:

- EXHIBIT 1: Affidavit of Margo Ratliff;
- EXHIBIT 2: Written Statement of Margo Ratliff;
- EXHIBIT 3: Affidavit of Vincent De'Maria;
- EXHIBIT 4: First Report of Work Injury, Form C-20;
- EXHIBIT 5: Wage Statement, Form C-41;
- EXHIBIT 5: Notice of Controversy, Form C-27;
- EXHIBIT 7: Questionnaire and Response of Dr. William Johnson;
- EXHIBIT 8: Corvel Outpatient Certification Recommendation;
- EXHIBIT 9: U.S. Security Associates Incident Report;
- EXHIBIT 10: Medical Records of Blount Orthopaedic Associates;
- EXHIBIT 11: Recorded Statement of Margo Ratliff;
- EXHIBIT 12: Employee Injury/Illness Incident Report; and
- EXHIBIT 13: Photographs.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the __8th__ day of February, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Margo Ratliff, Self-Represented Employee | X | | | Margo Ratliff 7805 McMillan Road Knoxville, TN 37914 |
| Douglas R. Bergeron, Employer's Counsel | | | X | Dbergeron@spicerfirm.com |

_____

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**