IN THE COURT OF WORKERS' COMPENSATION CLAIMS
 AT NASHVILLE

Diana Cartee, ) Docket No.: 2015-06-0414
 Employee, )
v. ) State File Number: 43843-2015
Schwan's Food Service, Inc., )
 Employer, ) Chief Judge Kenneth M. Switzer
And )
Hartford Insurance Company, )
 Carrier. )
 )

 EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS

 This matter came before the undersigned workers' compensation judge on the
Request for Expedited Hearing filed by the employee, Diana Cartee, pursuant to
Tennessee Code Annotated section 50-6-239 (2014). The present focus of this case is
compensability. The central legal issue is whether Ms. Cartee introduced sufficient
evidence for the Court to determine she is likely to prevail at a hearing on the merits
regarding whether her injury arose primarily out of and in the course and scope of her
employment, or if the injury is idiopathic as defined under the law. For the reasons set
forth below, the Court finds Ms. Cartee's injury is idiopathic. The Court therefore denies
her requested relief. 1

 History of Claim

 Ms. Cartee is a sixty-one-year-old resident of Williamson County, Tennessee.
(Ex. 12 at 1.) She works for Schwan's as "Regional Sales Manager-School Food
Service." !d.

 On June 3, 2015, Ms. Cartee exited the Sevier County Schools Building. She
testified that, while making a sales call as she descended the concrete steps in front of the
building, "My knee made this horrific sound." She worked with a "broker," Tina Ake,
who assisted her down the remainder of the steps and into the car. In her deposition, she
1
 A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order
as an appendix.

 1
stated, "My knee twisted on the steps and I could not put any pressure on my left leg to
come down the remaining steps." (Ex. 2 at 1.) Ms. Cartee stated there were only three or
four stairs, and she did not fall or strike her knee on anything as a result of the incident.
(Ex. 9 at 12, 15.) She further testified that, to her knowledge, there were no slick spots
on the stairs, nor were there loose boards or materials, and there was nothing unusual or
peculiar about the steps. !d. at 16. Ms. Cartee's testimony at the Expedited Hearing
essentially confirmed these factual allegations. Ms. Ake's Affidavit confirmed she heard
Ms. Cartee's knee "pop" as Ms. Cartee descended the steps, and afterward Ms. Cartee
was unable to bear weight on her leg. (Ex. 4 at 1.)

 Ms. Cartee sought unauthorized care at Tennessee Orthopedic Alliance (TOA) on
June 4, 2015. (Ex. 1 at 1-2.) She testified that a friend, Andrea Hooper accompanied her
to the first appointment. (Ex. 5 at 1.) Physician Assistant Jonathan Meriwether noted in
the patient history that Ms. Cartee "presents in regards to pain in her left knee. Began
two weeks ago. Simply twisted it and felt a pop. . . . [A] week ago, going down stairs,
the same thing happened." !d. at 1. Ms. Cartee testified on cross-examination she did not
tell PA Meriwether she sustained a workers' compensation injury. She further stated PA
Meriwether's history is incorrect. Ms. Hooper's Affidavit confirmed that Ms. Cartee told
PA Meriwether the injury occurred on June 3, 2015. (Ex. 5 at 1.)

 Ms. Cartee returned to TOA on June 16, 2015, after undergoing an MRI. (Ex. 1 at
4.) Dr. Allen Anderson noted the history as: "Diana is a 60-year-old lady who was at
work when she was coming down the steps. Her leg turned slightly and she had severe
pain in her left knee. She was then seen by Jonathan, who dictated that it began 2 weeks
ago when it actually was done the day before, so that her injury occurred on June 3,
2015." !d. Dr. Anderson assessed "[m]ild osteoarthritis and root tear of the medial
meniscus," and "[c]hronic (long term) degeneration (breakdown) of the knee joint
causing pain and stiffness." !d. at 4, 5.

 Ms. Cartee testified she gave notice before seeking treatment on June 4, 2015, and
Schwan's allowed her to work from home for the next few weeks, so that she lost no pay.
She spoke to the human resources department after the first TOA visit, and at some point
began communicating with claims examiner Teresa Wilson. Ms. Wilson wrote on the
First Report of Injury that Ms. Cartee's date of injury is June 3, 2015. (Ex. 6.) Ms.
Cartee testified that Ms. Wilson told her to proceed with treatment at TOA and the carrier
would cover the first visit and MRI. 2 Schwan's did not provide a panel, nor did it
reimburse her for co-pays relative to the first visit or MRI, but denied the claim on June
11, 2015. (Ex. 8.)

2
 The Workers' Compensation Law sets forth limited powers for workers' compensation judges at expedited
hearings in Tennessee Code Annotated section 50-6-239(10) (2015). Specifically, a workers' compensation judge
may order the payment of medical or temporary disability benefits at the interlocutory stage. !d. Ms. Cartee
impliedly asked this Court to order enforcement of an alleged oral contract, which this Court has no jurisdiction to
do.

 2
 At Ms. Cartee's deposition, she testified that, on June 1, 2015, her knee felt "a
little sore ... but it didn't prohibit me from going to work or doing what I needed to do."
(Ex. 9 at 22.) She similarly testified at the hearing that, as she was exiting the restroom
on June 1, 2015, "My knee made a little pop," but she continued working. Ms. Cartee
maintained there was no "injury" on June 1, 2015, both at her deposition (Ex. 9 at 23) and
in hearing testimony. She testified at the hearing she told both PA Meriwether and Dr.
Anderson about the June 1, 2015 incident to assist them in diagnosis and treatment.

 Dr. Anderson's Affidavit states:

 Ms. Cartee presented with pain in her left knee on 06/04/2015. The pain
 started after she twisted her knee and felt a pop in the posterior aspect of
 her knee. She had slight improvement but then had a recurrent injury when
 she was going down the stairs. The same thing happened; she had severe
 pain and was relegated to a wheelchair. . . . An MRI was performed,
 which revealed a root tear of the medial meniscus[.] . . . It is my opinion
 that the root tear of her medial meniscus was caused by the twisting injury
 and the subsequent re-injury when she was going down the steps. This
 caused the root of the medial meniscus to tear. This is definitely not an
 idiopathic condition. Idiopathic means that there is no known cause; in
 fact, we know the cause was a twisting injury.

(Ex. 3 at 1) (emphasis added).

 Ms. Cartee filed a Petition for Benefit Determination seeking medical benefits. 3
(Ex. 12; T.R. 1.) The parties did not resolve the disputed issues through mediation, and
the Mediating Specialist filed a Dispute Certification Notice. (T.R. 4.) Ms. Cartee filed a
Request for Expedited Hearing (T.R. 5), and this Court heard the matter on November 24,
2015.

 At the Expedited Hearing, Ms. Cartee asserted she sustained an injury arising
primarily in and out of the course and scope of her employment when she twisted her left
knee while descending stairs on June 3, 2015. She seeks reimbursement of medical
expenses incurred. Schwan's countered that Ms. Cartee's injury did not arise in the
course of her employment because she gave inconsistent dates regarding the date of
injury, in essence challenging her credibility as to the alleged events. Further, the injury
did not arise primarily out of her employment, but rather is idiopathic in nature, because
Ms. Cartee did not identify any special hazard of employment that caused her knee to

3
 Ms. Cartee additionally checked the boxes next to "Temporary Disability Benefits" and "Permanent Disability
Benefits." However, she withdrew her request for temporary disability benefits in advance of the Expedited
Hearing. She is not at maximum medical improvement yet; therefore, her request for permanent disability benefits
is not ripe.

 3
twist.

 Findings of Fact and Conclusions of Law

 The Workers' Compensation Law shall not be remedially or liberally construed in
favor of either party but shall be construed fairly, impartially and in accordance with
basic principles of statutory construction favoring neither the employee nor
employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers'
compensation claim has the burden of proof on all essential elements of a claim. Tindall
v. Waring Park Ass 'n, 725 S.W.2d 935, 937 (Tenn. 1987); 4 Scott v. Integrity Staffing
Solutions, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn.
Workers' Comp. App. Bd. Aug. 18, 20 15). An employee need not prove every element
of his or her claim by a preponderance of the evidence in order to obtain relief at an
expedited hearing. McCord v. Advantage Human Resourcing, No. 2014-06-0063, 2015
TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27,
20 15). At an expedited hearing, an employee has the burden to come forward with
sufficient evidence from which the trial court can determine that the employee is likely to
prevail at a hearing on the merits. !d.

 Under the Tennessee Workers' Compensation Law, an injury is accidental "only if
the injury is caused by a specific incident, or set of incidents, arising primarily out of and
in the course and scope of employment, and is identifiable by time and place of
occurrence[.]" Tenn. Code Ann.§ 50-6-102(13)(A) (2014). The statutory requirements
that an injury arise out of and in the course of the employment are not synonymous
"although both elements exist to ensure a work connection to the injury for which the
employee seeks benefits." Blankenship v. Am. Ordnance, 164 S.W.3d 350, 354 (Tenn.
2005); Hosfordv. Red Rover Preschool, 2014 TN Wrk. Comp. App. Bd. LEXIS 1, at *19
(Tenn. Workers' Comp. App. Bd. Oct. 2, 2014).

 An injury occurs in the course of employment if it takes place while the employee
performs a duty he or she is employed to perform. Fink v. Caudle, 856 S.W.2d 952, 958
(Tenn. 1993). Thus, the "course of employment" requirement focuses on the time, place
and circumstances of the injury. Saylor v. Lakeway Trucking, Inc., 181 S.W.3d 314, 318
(Tenn. 2005).

 In Willis v. All Staff, the Tennessee Workers' Compensation Appeals Board
recently reiterated longstanding causation principles:

4
 The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme
Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-
July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation
Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory
amendments." McCord v. Advantage Human Resourcing, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd.
LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

 4
 The mere presence of the employee at the place of injury because of the
 employment is not enough, as the injury must result from a danger or
 hazard peculiar to the work or be caused by a risk inherent in the nature of
 the work. Accordingly, an injury purely coincidental, or contemporaneous,
 or collateral, with the employment ... will not cause the injury ... to be
 considered as arising out of the employment.

Willis v. All Staff, 2015 TN Wrk. Comp. App. Bd. LEXIS 42, at *19-20 (Tenn. Workers'
Comp. App. Bd. Nov. 9, 2015) (citations omitted).

 With regard to idiopathic injuries, the Supreme Court affirmed the trial court's
decision denying recovery to an employee who fell on steps at work due to a pre-existing
spinal condition that caused his legs to tire and go numb. See Greeson v. Am. Lava
Corp., 392 S.W.2d 931, 935 (Tenn. 1965). In fact, "Tennessee courts have consistently
held that an employee may not recover for an injury occurring while walking unless there
is an employment hazard, such as a puddle or step, in addition to the injured employee's
ambulation." Wilhelm v. Krogers, 235 S.W.3d 122, 128-129 (Tenn. 2007). Further,
idiopathic injuries-those with an "unexplained origin or cause"-do not arise out of the
work unless there is "some condition of the employment that presents a peculiar or
additional hazard." Veler v. Wackenhut Servs., Inc., 2011 Tenn. LEXIS 78, at *9 (Tenn.
Workers' Comp. Panel 2011) (emphasis added). In workers' compensation cases,
benefits have generally not been allowed where the cause of an injury has been found to
be due to "some diseases or other idiopathic condition personal to the employee, absent
some special hazard ofthe employment." Wilhelm, 235 S.W.3d at 128.

 In a Workers' Compensation Panel opinion discussing idiopathic injuries, Justice
Gary Wade wrote that examples of injuries deemed idiopathic by the Supreme Court
have included an unexplained seizure or fainting episode and a knee "giving way"
resulting in a fall. Veler, 2011 Tenn. LEXIS 78, at *9 (citing Greeson, 392 S.W.2d at
934-935). Further, in Wilhelm, Justice Wade wrote that in McCain v. Allied-Bendix. Inc.,
1994 WL 901486 (Tenn. Workers' Comp. Panel Apr. 5, 1994), the employee's knee
"went out" at work while he was walking after the completion of his daily duties.
Wilhelm, 235 S.W. at 128. The Wilhelm Court held that the employee's fall at work was
caused by an idiopathic condition and there was no condition of the employment that
presented a peculiar or additional hazard to the employee. !d. at 129.

 Mindful of the foregoing, the Court finds that Ms. Cartee twisted her knee while
descending steps at the Sevier County Schools Building while on a sales call on June 3,
20 15. In her deposition and at the Expedited Hearing, she described experiencing
unexplained soreness in her left knee on June 1, 2015. At the Expedited Hearing, Ms.
Cartee testified she heard her knee "pop" after leaving the restroom. On both occasions,
she testified that the incident did not prevent her from working. The pain from twisting

 5
her knee on June 3, 2015, was much greater in severity, and is traceable to a distinct
event and moment in time. Ms. Ake confirmed hearing the noise from Ms. Cartee's knee
on June 3, 2015, which left Ms. Cartee unable to walk without assistance. Ms. Cartee
testified that PA Meriwether wrote an incorrect history in his notes, which Ms. Hooper's
affidavit confirmed. Ms. Cartee took reasonable measures to correct the inaccuracies.
Ms. Wilson recorded the date of injury on a form she filed with the State of Tennessee as
June 3, 2015. The Court finds that Ms. Cartee appeared calm, at ease, self-assured,
steady, confident, forthcoming, reasonable and honest when testifying, which
characteristics, according to the Tennessee Supreme Court, are indicia of reliability. See
Kelly v. Kelly, 445 S.W.3d 685, 694-695 (Tenn. 2014). The Court concludes Schwan's
argument regarding the date of the injury is meritless, and Ms. Cartee, a very credible
witness, satisfied the course of employment requirement. Schwan's challenge to Ms.
Cartee's credibility based on differing historical notes in the medical records is of no
value to this Court's decision-making process.

 It is the "arising primarily out of and in" employment prong-causation-where Ms.
Cartee's claim must fail. Ms. Cartee consistently described the mechanism of injury as
an audible sound and her knee "twisting." The description is similar to the claimant's
knee "giving out" in Greeson. Ms. Cartee identified no peculiar or additional hazard on
the steps. Moreover, the Court cannot rely on Dr. Anderson's causation opinion in his
Affidavit, where he stated the tear "was caused by twisting injury and subsequent re-
injury when she was going down the steps." This statement fails to address what caused
the "twisting injury," which is the central inquiry before this Court. In addition, Dr.
Anderson's medical definition of "idiopathic" in his Affidavit is not a qualified legal
conclusion. Legal conclusions remain in the province of the Court, based on factual
findings and supported by legal precedent.

 Therefore, as a matter of law, Ms. Cartee has not come forward with sufficient
evidence from which this Court concludes she is likely to prevail at a hearing on the
merits on the issue of compensability. Her request for medical benefits is denied at this
time.

IT IS, THEREFORE, ORDERED as follows:

 1. Ms. Cartee's claim against Schwan's and its workers' compensation carrier for the
 requested medical benefit is denied at this time.

 2. This matter is set for an Initial (Scheduling) Hearing on January 12, 2016, at 1:30
 p.m. Central time.

 ENTERED this the 1st day of December, 2015.

 6
Initial (S.cheduling) Hearing:

 An Initial (Scheduling) Hearing has been set with Chief Judge Kenneth M.
Switzer, Court of Workers' Compensation Claims. You must call 615-532-9552 or
toll-free at 866-943-0025 to participate in the Initial Hearing.

 Please Note: You must call in on the scheduled date/time to
participate. Failure to call in may result in a determination of the issues without
your further participation.

Right to Appeal:

 Tennessee Law allows any party who disagrees with this Expedited Hearing Order
to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of
Appeal, you must:

 1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

 2. File the completed form with the Court Clerk within seven business days of the
 date the Workers' Compensation Judge entered the Expedited Hearing Order.

 3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

 4. The appealing party is responsible for payment of a filing fee in the amount of
 $75.00. Within ten calendar days after the filing of a notice of appeal, payment
 must be received by check, money order, or credit card payment. Payments can be
 made in person at any Bureau office or by United States mail, hand-delivery, or
 other delivery service. In the alternative, the appealing party may file an Affidavit
 of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing
 fee. The Affidavit of Indigency may be filed contemporaneously with the Notice
 of Appeal or must be filed within ten calendar days thereafter. The Appeals Board
 will consider the Affidavit of Indigency and issue an Order granting or denying
 the request for a waiver of the filing fee as soon thereafter as is
 practicable. Failure to timely pay the filing fee or file the Affidavit of
 lndigency in accordance with this section shall result in dismissal of the
 appeal.

 7
5. The parties, having the responsibility of ensuring a complete record on appeal,
 may request, from the Court Clerk, the audio recording of the hearing for the
 purpose of having a transcript prepared by a licensed court reporter and filing it
 with the Court Clerk within ten calendar days of the filing of the Expedited
 Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of
 the evidence within ten calendar days of the filing of the Expedited Hearing
 Notice of Appeal. The statement of the evidence must convey a complete and
 accurate account of what transpired in the Court of Workers' Compensation
 Claims and must be approved by the workers' compensation judge before the
 record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory
 appeal, the appellant shall file such position statement with the Court Clerk within
 five business days of the expiration of the time to file a transcript or statement of
 the evidence, specifying the issues presented for review and including any
 argument in support thereof. A party opposing the appeal shall file a response, if
 any, with the Court Clerk within five business days of the filing of the appellant's
 position statement. All position statements pertaining to an appeal of an
 interlocutory order should include: (1) a statement summarizing the facts of the
 case from the evidence admitted during the expedited hearing; (2) a statement
 summarizing the disposition of the case as a result of the expedited hearing; (3) a
 statement of the issue(s) presented for review; and (4) an argument, citing
 appropriate statutes, case law, or other authority.

 8
 APPENDIX

Exhibits:
 1. Medical records, Tennessee Orthopaedic Alliance
 2. Affidavit of Diana Cartee, September 23, 2015
 3. Affidavit of Dr. Allen Anderson, November 6, 2015
 4. Affidavit of Tina Ake, October 15, 2015
 5. Affidavit of Andrea Hooper, October 15, 2015
 6. First Report of Work Injury/Illness Form, June 30, 2015
 7. Form C-41, Wage Statement
 8. Form C-23, Notice ofDenial of Claim, June 11, 2015
 9. Deposition of Diana Cartee, August 7, 2015
 10. Tennessee Orthopaedic Alliance, receipts/bills
 11. Job description
 12.Petition for Benefit Determination, June 23, 2015

Technical record: 5
 1. Petition for Benefit Determination, June 23, 2015
 2. Schwan's pre-mediation position statement, July 8, 2015
 3. Ms. Cartee's pre-mediation position statement, July 10, 2015
 4. Dispute Certification Notice, July 29, 2015
 5. Request for Expedited Hearing, September 29, 2015
 6. Schwan's Brief in Opposition to Employee's Petition for Permanent Partial
 Disability, Temporary Total Disability, and Medical Benefits, September 29, 2015
 7. Schwan's Supplemental Brief in Opposition to Employee's Petition for Permanent
 Partial Disability, Temporary Total Disability, and Medical Benefits, November
 17, 2015

5
 The Court did not consider attachments to Technical Record filings unless admitted into evidence during the
Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as
allegations unless established by the evidence.

 9
 CERTIFICATE OF SERVICE

 I hereby certify that a true and correct copy of the Expedited Hearing Order
Denying Medical Benefits was sent to the following recipients by the following methods
of service on this the 1st day ofDecember, 2015.

Name Certified Via Via Service sent to :
 Mail Fax Email
Diana Cartee, X X Gdaddy.cm1ce@gmail.com;
Employee 1113 Watkins Creek Dr.,
 Franklin, TN 37067
Greg Fuller, X ghfu ller@miis.com
Employer's Counsel

 10