Marcie SUDDUTH, widow of Guy Lawrence
Sudduth, Deceased, Appellant,

v.

Harold WILLIAMS d/b/a Williams Texaco
Service and Continental Insurance
Company, Appellees.

Supreme Court of Tennessee.

Dec. 16, 1974.

Larry K. Scroggs, Memphis, for appellant.

George L. Rice, Jr., Memphis, for appellees.

## OPINION

HARBISON, Justice.

This is an action for workmen's compensation death benefits. Petitioner is the widow of decedent, Guy Lawrence Sudduth, who died on July 29, 1972, after having sustained a fall at his place of employment on July 24, 1972. The trial court dismissed the action, finding that the decedent fell as the result of an idiopathic attack, and that his injury was not caused by a hazard peculiar to his employment. The Court found that the injury did not have its origin in a risk connected with the employment nor was it causally connected therewith.

This Court, of course, reviews the case under the material evidence rule. It is well settled that if the findings of the trial judge are supported by inferences which may reasonably be drawn from the evidence, this Court will not disturb those findings, though the evidence may be reasonably capable of other or different inferences. Greeson v. American Lava Corp., 216 Tenn. 461, 392 S.W.2d 931 (1965); Lynch v. LaRue, 198 Tenn. 101, 278 S.W. 2d 85 (1955).

There is little dispute concerning the facts of the case. The employer operated a service station in Shelby County, Tennessee, and on Saturday, July 22, 1972, the decedent worked a few hours for the employer on a trial basis. This was his first em-

ployment at the service station, and at the conclusion of his work on that date, he was paid a small sum and was told to return on the following Monday morning. He did return at about 8 o'clock on the morning of Monday, July 24, 1972, and apparently drove an automobile of a customer onto the grease rack in one of the service bays of the station. He was found unconscious and quivering or twitching at about 8:30 a. m. in the service bay, having fallen and sustained a laceration to the left side of his head. There is no evidence in the record that the decedent slipped or fell on grease or oil, the testimony being uncontradicted that in the area where he fell the floor was clean. When decedent was found, his head was a few inches from an oil catch, which had been placed beneath the automobile which was being serviced, but there is no evidence in the record that the decedent struck the oil catch, or that he struck anything else other than the floor, in his fall.

There were no actual eyewitnesses to the fall but a witness working in an adjoining bay heard a noise in the area where the decedent was working, and came upon the decedent a few seconds later.

The employer immediately summoned an ambulance, and the decedent was taken to the emergency room of the Baptist Hospital in Memphis. He arrived there at about 9:10 a. m. The emergency room records show a diagnosis of "alcoholic seizure", stating:

"second seizure in 2 wks. Adult onset. Fell & lacerated forehead."

The laceration of the decedent was sutured, and he was released within a short time. He was readmitted to the emergency room at about 11:55 a. m. on the same date, after having been found unconscious at a street intersection in Memphis, a fairly short distance from the hospital. There is no evidence as to whether the decedent did or did not receive any further injury from the time he left the hospital until he was readmitted, or as to what happened to him in the interim. When he was readmitted to the hospital, however, decedent was found to be suffering from a serious head injury. A neurosurgeon testified that the decedent developed a subdural hematoma, or blood clot on the left side of the brain, for which surgery was performed. The decedent did not recover, however, and an autopsy after his death revealed that he had sustained a fracture of the skull on the right side, although the fracture itself had not been revealed by X-rays taken prior to his death.

Although the widow of decedent denied having any knowledge of previous seizures suffered by him, she stated that he had been admitted to the Methodist Hospital in Memphis some three weeks prior to July 24, 1972, it being her understanding that he had become overheated while working for a previous employer. The records of the Methodist Hospital concerning this admission, however, contained a diagnosis of "alcohol-withdrawal seizures". Admission notes in the hospital record state that the decedent "consumes $\frac{1}{5}$ to $\frac{2}{5}$ of alcohol daily for a long period of time." The note further reads:

"This thirty-eight-year-old male was reported apparently as having a grand-mal seizure while in the E R. History is that the man consumes quite a bit of alcohol and over the last several days has not had any due to the fact that he thought it was making him too shaky. He discontinued the alcohol suddenly and had the grand-mal seizure. He has never had any history of trauma. He has had one grand-mal seizure before related to the alcohol withdrawal. There are no other neurological findings."

The widow of decedent testified that following the fall of decedent on the morning of July 24, 1972, the employer stated to her that the decedent had struck his head on the oil catch beneath the car which he was servicing. The employer, however, emphatically denied making this statement and, as previously stated, there is no evi-

dence in the record that this occurred. The testimony is clear that there was no blood found at any place on the premises of the employer except on the floor immediately adjacent to the position where decedent was lying. The fall was either idiopathic in its origin or else it stands unexplained in the record.

The neurosurgeon who attended the decedent at Baptist Hospital testified on behalf of the petitioner. He was unable to explain the reason why the decedent was discharged from the emergency room after his initial admission, but he stated that there was no history of any second or subsequent injury sustained by the decedent after he left the emergency room. It was his opinion that the injuries sustained in the initial fall at the service station were the cause of the subdural hematoma which subsequently developed, and that death was due to the injuries sustained in that fall.

Petitioner relies upon the rule allowing a permissible inference that an accidental injury received by an employee arose out of and in the course of his employment, where the employee is found injured or dead under circumstances indicating that an injury or death occurred within the time and space limits of the employment. Crane Rental Service v. Rutledge, 219 Tenn. 433, 410 S.W.2d 418 (1966); Milstead v. Kaylor, 186 Tenn. 642, 212 S.W.2d 610 (1948). The employer, on the other hand, relies upon the rule that there must be shown a causal connection between the conditions under which the work is required to be performed and the resulting injury, and the rule that injuries due solely to an idiopathic attack are not compensable unless accompanied by another hazard incident to the employment which is shown to be the immediate cause of the accident. Greeson v. American Lava Corp., 216 Tenn. 461, 392 S.W.2d 931 (1965); Tapp v. Tapp, 192 Tenn. 1, 236 S.W.2d 977 (1951).

In the *Tapp* case, *supra*, an employee was driving an automobile in the course and scope of his employment. He was suddenly seized with a coughing spell due to an asthmatic condition. As a result he temporarily "blacked out", and the automobile which he was driving ran into a ditch. The employee received injuries for which he sought workmen's compensation benefits.

This Court reversing the trial court, allowed recovery, stating:

"We are not by this opinion irrevocably committed to the proposition that all accidents resulting from epileptic seizures, or other idiopathic conditions, are compensable. There may be in many instances no causal connection whatever between the cause of the 'black-out' and the nature of the employment. But it seems reasonable to conclude, based upon the authorities cited, that where epilepsy, or other physical disturbances, suddenly and without expectation occur and contribute to cause an injury to an employee while at work the same should be held compensable, provided there is present another hazard, incident to the employment which is generally known to exist and which is shown to be the immediate cause of the accident." 192 Tenn. at 9, 236 S.W.2d at 980.

In the *Greeson* case, *supra*, petitioner suffered from an atrophied leg, which frequently failed or gave way under him. While attempting to ascend a flight of steps at his place of employment, his afflicted leg failed to respond and he fell, causing injuries for which he sought workmen's compensation. The trial court dismissed the petition, finding that the fall was caused by an idiopathic attack. This Court affirmed, stating:

"In our judgment, under the evidence contained in the record, the Trial Judge was justified in concluding that when petitioner's right leg failed to respond he would fall regardless of whether he was on level ground or on a step and that the steps did not contribute to cause the fall. Furthermore, under the evidence, the

conclusion that the petitioner's injury was not made greater because of the steps is fully justified by the evidence. To paraphrase the language of the *Tapp* case, the evidence warrants the conclusion that no hazard incident to the employment is shown to be the immediate cause of the accident." 216 Tenn. at 468, 392 S.W.2d at 934–935.

Examination of the authorities generally reveals that workmen's compensation benefits usually are awarded in connection with idiopathic falls where some condition of the employment presents a peculiar or additional hazard. As stated in Larson, Workmen's Compensation Law, § 12.12 (1972), the "currently controversial question" is whether the effects of an idiopathic fall to the level ground or bare floor should be deemed to arise out of the employment.

In § 12.14 of the same text, the following statement is made:

"Inevitably there arrive cases in which the employee suffers an idiopathic fall while standing on a level surface, and in the course of his fall, hits no machinery, bookcases, or tables. At this point there is an obvious temptation to say that there is no way of distinguishing between a fall onto a table and a fall onto a floor, since in either case the hazard encountered in the fall was not conspicuously different from what it might have been at home. A distinct majority of jurisdictions, however, have resisted this temptation and have denied compensation in level-fall cases. The reason is that the basic cause of the harm is personal, and that the employment does not significantly add to the risk."

The author at § 10.31 of the text discusses the difference between cases involving idiopathic injuries and falls occurring in the course of employment which are totally unexplained. In the latter instance, compensation is usually allowed but, while there is some division of authority on the point, benefits have generally not been allowed where the cause of the fall has been found to be due to some diseased or other idiopathic condition personal to the employee, absent some "special hazard" of the employment.

The workmen's compensation statute in Tennessee permits recovery for injury by accident "arising out of and in the course of employment . . ." T.C.A. § 50–902.

It has been held in numerous cases in this state that the phrases "arising out of" and "in the course of" are not synonymous, but rather, embody distinct concepts which are basic to liability under the statute. Knox v. Batson, 217 Tenn. 620, 399 S.W.2d 765 (1966). It was held in that case that the mere presence of an employee at the place of injury because of his employment will not alone result in the injury being considered as arising out of the employment. If the injury or death resulted from an exposure which is no more or different from that of any other member of the public similarly situated in place and time, it is not compensable.

The trial judge in the present case has found as a fact that the fall sustained by the decedent at his place of employment resulted from an idiopathic seizure. Based upon his medical history and the medical records in the case, this was a permissible inference to be drawn, and we cannot say that it is unsupported by material evidence in the record. Any prima facie case which might be established from an unexplained fall was sufficiently rebutted, and the finding that no hazard incident to the employment accompanied or contributed to the fall is supported by material evidence.

The judgment of the trial court is affirmed at the cost of the appellant.

FONES, C. J., and COOPER, HENRY and BROCK, JJ., concur.