FILED

JUNE 14, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 2:34 PM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Horace Wade Thomas, | ) | Docket No. 2015-06-0546 |
| Employee, | ) | |
| v. | ) | State File No. 57850-2015 |
| | ) | |
| Zipp Express, | ) | Judge Joshua Davis Baker |
| Employer, | ) | |
| | ) | |
| And | ) | |
| | ) | |
| Technology Insurance Company, | ) | |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

This matter came before the Court on May 31, 2016, on the Request for Expedited Hearing filed by the employee, Horace Wade Thomas, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is Mr. Thomas' entitlement to temporary disability and medical benefits. The central legal issue is his likelihood of success in proving the compensability of his injury at a trial on the merits. The employer, Zipp Express (Zipp), raised lack of notice, violation of a safety rule and non-work-relatedness as defenses. For the reasons set forth below, the Court finds Mr. Thomas would likely succeed at a hearing on the merits in proving a prima facie case of a work-related injury. The Court therefore holds Zipp must provide Mr. Thomas a panel of physicians for evaluation, and if necessary, treatment of his condition.[1]

## History of Claim

Mr. Thomas is a fifty-year-old resident of Wilson County, Tennessee, who worked for Zipp as an over-the-road truck driver. According to his Petition for Benefit Determination, Mr. Thomas stayed awake all night on January 18, 2015, while transporting goods for Zipp's customers over icy roads. While visiting a truck-stop convenience store on January 19, 2015, he passed out, hitting his head on a metal rack.

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

(T.R. 1.) The case file contained a video of the incident. (Ex. 13.) Mr. Thomas attributed his episode of syncope, or fainting, to exhaustion resulting from operating the truck for Zipp under difficult weather conditions. In his affidavit, Mr. Thomas alleged Zipp is responsible for his injury because it instructed him to continue working despite knowing he had not slept. (Ex. 2.)

After Mr. Thomas passed out, an air ambulance took him to the Roanoke Memorial Hospital where emergency room workers stapled his scalp laceration. He received follow-up treatment at the Carilion Clinic. In the Carilion medical notes, under a section entitled "IMPRESSION," the following appeared: "Syncope, probably due to sleep loss, question if there is superimposed sleep apnea." (Ex. 1 at 6.) The same record also contained the following history:

> He usually does not come this far East on his truck driving job, but this particular trip was unusually longer and he had not slept the night before. He took 1-1/2 hours of sleep in southwest Virginia yesterday and continued the day and night getting 1 or 2 hours of sleep here and there until he went into a truck stop around 3:20 p.m. At some point he remembers being in a truck stop and then he fell to the ground . . . He has never had any blackout spells before; any significant head trauma (maybe fell out of a bunk bed as a child) . . . He had one blackout spell at age 10 when he had pneumonia.

*Id*.

Carilion discharged Mr. Thomas on February 21, 2015, with a primary diagnosis of fainting and secondary diagnoses of diabetes and severe, uncontrolled high blood pressure. He received prescriptions for Tylenol, insulin and Lisinopril and an instruction to check his blood sugar before and after every meal. He also received a restriction that prevented him from driving, "until syncope work up is completed." *Id*. at 32. Mr. Thomas incurred significant medical bills for his transportation to Roanoke Memorial, his emergency treatment there, and his treatment at Carilion. (Ex. 12.)

After his release from the hospital, another Zipp driver picked up Mr. Thomas and drove him home. Although Mr. Thomas testified he reported his injury to Zipp, the company did not file a First Report of Injury until September 11, 2015. In the Report, Zipp described the mechanism of injury as follows: "Passed out due to uncontrolled diabetes and struck his head." (Ex. 4.) On September 30, 2015, Zipp denied the claim citing lack of compensability and untimely reporting as reasons for denial. Zipp also terminated Mr. Thomas citing safety concerns resulting from his diagnosis of fainting, diabetes, and severe, uncontrolled, high blood pressure as reason for the termination. (Ex. 7.)

On October 20, 2015, Mr. Thomas filed a Petition for Benefit Determination (PBD) seeking temporary disability benefits. The parties did not resolve the disputed issues through mediation and the Mediating Specialist filed a Dispute Certification Notice (DCN). Mr. Thomas filed a Request for Expedited Hearing and this Court heard the matter on May 31, 2016.

At the Expedited Hearing, Mr. Thomas testified he delivered a load to a town in Wisconsin for Zipp on January 17, 2015. Zipp then dispatched him to retrieve a load from Green Bay, Wisconsin, for delivery to Salem, Virginia. Mr. Thomas left Green Bay at 6:25 p.m. and drove to Gary, Indiana, where he "shut down" for the night. At 9:15 a.m. the following morning, he left Indiana and drove toward Salem, Virginia.

On Interstate 77 in West Virginia, the weather became treacherous with ice and snow covering the road. Mr. Thomas testified he could not move his truck so he sat in the truck on the interstate until the next morning. Mr. Thomas said he called and informed the dispatcher he was stuck on the interstate. Soon after traffic began moving, Mr. Thomas stopped his truck and rested for a few hours. He again called the dispatcher and reported he needed to rest.

After resting, Mr. Thomas delivered his load to the destination in Virginia on January 19, 2015. He testified he was still tired and wanted to rest some more, but the dispatcher had another load for him to retrieve after he delivered the load in Salem. He said the dispatcher told him he needed to pick up that load before stopping. Mr. Thomas went to pick up the load and attempted to sleep while the customer loaded his truck.

After the customer finished loading his truck, Mr. Thomas drove to a truck-stop to rest for the night. Upon arrival at the truck-stop, he testified he went inside and took two bottles of water from the cooler. He turned to walk out and everything went black. Mr. Thomas stated life flight transported him to the hospital. He remembered nothing else until he woke up in the ambulance.[2]

Mr. Thomas admitted he suffers from diabetes, but denied he failed to take his insulin prior to the syncopal episode. He, however, also stated he had trouble determining which foods he can and cannot eat to control his diabetes. Additionally, he admitted spending time on the road made it hard for him to exercise, which could also negatively affect his diabetes.

On cross-examination, Mr. Thomas admitted he did not have his diet completely under control but was still working to understand how to eat for his diabetic condition. He also admitted federal Department of Transportation (DOT) rules required him to rest

---

[2] The Court understood this testimony to mean a helicopter transported Mr. Thomas to the hospital and it was unclear if he referred to the helicopter or a traditional ambulance through his testimony.

3

for at least ten hours after driving for eleven hours. Mr. Thomas stated DOT would "shut me down" if investigators discovered he drove more than eleven hours without stopping for the mandatory rest period. He denied his time stuck on the interstate violated the mandatory DOT rules for truck-driver rest. He explained the truck was stopped and could not go anywhere so he was considered "off" under the rules.

Zipp called Scott Lannom, its director of operations. Mr. Lannom testified Zipp terminated Mr. Thomas because the incident at the truck-stop presented a danger to Mr. Thomas, Zipp's equipment, and others on the highway.

Mr. Lannom explained the loads Mr. Thomas picked up in Virginia were "third-party loads," or loads from a non-Zipp customer who advertised publicly for companies to bid on hauling them. According to Mr. Lannom, Zipp had nothing to lose by refusing the third-party loads Mr. Thomas retrieved. Mr. Lannom could not, however, testify whether the dispatchers told Mr. Thomas to retrieve the third-party loads despite his lack of sleep.

Mr. Thomas argued his claim is work-related because his efforts to deliver and retrieve loads of goods, at the direction of Zipp's dispatcher, resulted in the exhaustion that caused his syncopal episode and resulting injury. He asked that the Court order Zipp to pay all medical bills associated with his injury and to pay him temporary disability benefits. He explained he got hurt while trying to do the job in accordance with the dispatcher's instructions and to the best of his abilities.

Zipp argued Mr. Thomas' claim should be denied for failure to give proper notice of an alleged injury. Additionally, Zipp argued Mr. Thomas failed to carry his burden of proving a likelihood of success on the merits because he presented no medical evidence of a causal relationship between his work for Zipp and the syncopal episode that caused his injury.[3] Zipp further argued Mr. Thomas failed to prove the injury had any connection to work from a factual standpoint and Mr. Thomas' work did not contribute more than fifty percent in causing his injury. Instead, Zipp claimed the injury was idiopathic. Finally, although it did not raise misconduct as a defense, Zipp alleged Mr. Thomas' own conduct, particularly his failure to get adequate rest in violation of DOT policy, caused his injury.

## Findings of Fact and Conclusions of Law

In order to grant the relief Mr. Thomas seeks, the Court must apply the following legal principles. Mr. Thomas bears the burden of proof on all prima facie elements of his

---

[3] In addition to these arguments, Zipp provided a list of additional issues as part of the DCN. Zipp, however, did not directly address any of these arguments during its case or closing argument. Accordingly, the Court considers these issues waived for purposes of this expedited hearing.

4

workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). He need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7- 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, Mr. Thomas has the burden to come forward with sufficient evidence from which this Court can determine he is likely to prevail at a hearing on the merits. *Id.*

**I.      Zipp had actual knowledge of Mr. Thomas' accident.**

Zipp argued Mr. Thomas cannot recover benefits because he failed to provide timely notice the injury occurred. The Workers' Compensation Law requires employees to promptly report all workplace injuries:

> Every injured employee or the injured employee's representative shall, immediately upon the occurrence of an injury, or as soon thereafter as is reasonable and practicable, give or cause to be given to the employer who has no actual notice, written notice of the injury, and the employee shall not be entitled to physician's fees or to any compensation that may have accrued under this chapter, from the date of the accident to the giving of notice, unless it can be shown that the employer had actual knowledge of the accident. No compensation shall be payable under this chapter, unless the written notice is given to the employer within thirty (30) days after the occurrence of the accident, unless reasonable excuse for failure to give the notice is made to the satisfaction of the tribunal to which the claim for compensation may be presented.

Tenn. Code Ann. § 50-6-201(a)(1) (2015). "Notice must be calculated reasonably to convey the message that the employee has suffered an injury arising out of and in the course of employment." *Jones v. Helena Truck Lines, Inc.*, 833 S.W.2d 62, 64 (Tenn. 1993). Rules concerning notice exist to give the employer an opportunity to investigate the claim before evidence spoils, and to allow the employer to facilitate appropriate medical care for the injured employee in a timely manner. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. Workers' Comp. Panel 1995).

At the hearing, Mr. Thomas stated he told Zipp about the incident and the evidence supports his testimony. The phone records showed he constantly contacted the dispatcher at Zipp, and a Zipp employee picked him up from the hospital. The Court, therefore, finds Zipp had actual notice of the accident. Despite actual knowledge of the accident, Zipp argued Mr. Thomas failed to inform it the accident was work-related and his claim is barred for that reason. The Court disagrees. Mr. Thomas testified he told the

dispatcher he was tired and needed to stop and rest. He then passed out at the truck-stop, ostensibly from exhaustion related to his work. But for his work for Zipp, Mr. Thomas would not have been in such an exhausted state and would not have been in the truck-stop at all. All the evidence shows Zipp knew of his complaints and resulting injury. For these reasons, the Court finds Zipp had sufficient notice of Mr. Thomas' injury and its connection to his work.

## II. Mr. Thomas carried his burden of proving a prima facie work-related claim and is entitled a panel of physicians.

The Workers' Compensation Law defines an "injury" as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes . . . the need for medical treatment." Tenn. Code Ann. § 50-6-102(14) (2015). Further, an injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment[.] Tenn. Code Ann. § 50-6-102(14)(A) (2015). Arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). "An injury occurs in the course of employment if 'it takes place within the period of the employment, at a place where the employee reasonably may be, and while the employee is fulfilling work duties or engaged in doing something incidental thereto.'" *Hubble v. Dyer Nursing Home*, 188 S.W.3d 525, 534 (Tenn. 2006) (citing *Blankenship v. Am. Ordnance Sys., LLC*, 164 S.W.3d 350, 354 (Tenn. 2005)). In a recent decision concerning causation the Appeals Board stated the following:

> [I]n evaluating whether an injured worker's accident arose out of employment, the critical question is not whether a third party's fault or negligence "caused" the injury as that term is applied in a tort setting, but whether the employment more likely than not caused the accident in the sense that the accident had its origin in hazards to which the employee was exposed by reason of the employment.

*Navyac v. Universal Health Serv's.*, No. 2015-06-0677, TN Wrk Comp. App. Bd. 2016 LEXIS 17, at *16 (Tenn. Workers' Comp. App. Bd. Mar. 31, 2016).

Here, Mr. Thomas credibly testified that he passed out at a truck-stop after driving Zipp's truck for an extended period of time. Additionally, his uncontroverted testimony showed the Zipp dispatcher instructed him to retrieve additional loads despite his lack of sleep. The only other testimony concerning instruction from the dispatcher came from Mr. Lannom. Although he claimed Zipp's policy would not support the dispatcher demanding Mr. Thomas retrieve the loads, he could not testify for certain that the

dispatcher did not instruct Mr. Thomas to do so. Due to the extended work schedule, Mr. Thomas testified he passed out from exhaustion. Furthermore, in this Court's opinion the fact that failure to retrieve the load would not have harmed Zipp from a business standpoint makes no difference. Mr. Thomas' retrieval of the load certainly benefitted Zipp because it was promised payment for the delivery. Accordingly, Mr. Thomas' activity was rationally related to, and therefore arose primarily out of, his employment for Zipp.

His accident also occurred in the course and scope of his employment. Mr. Thomas testified he drove to a truck-stop to rest after retrieving the load for Zipp. He entered the truck-stop convenience store to retrieve some water and passed out in the process. The Court finds Mr. Thomas' work for Zipp placed him the position that resulted in his injury. He went to the truck-stop to rest after his extended driving. But for his work he would not have been in the truck-stop. Additionally, his work for Zipp allegedly exhausted him and he passed out. Accordingly, the Court finds Mr. Thomas' accident occurred in the course and scope of his employment for Zipp.

Zipp also implicitly raised employee misconduct as an affirmative defense. The Court finds this defense is without merit. Tennessee Code Annotated section 50-6-110(a) (2015) provides the following in pertinent part:

No compensation shall be allowed for an injury or death due to:

(1) The employee's willful misconduct;

(2) The employee's intentional self-inflicted injury;

(3) The employee's intoxication or illegal drug usage;

(4) The employee's willful failure or refusal to use a safety device[.]

The controlling case outlining the willful misconduct affirmative defense is *Mitchell v. Fayetteville Public Utilities,* 368 S.W.3d 442 (Tenn. 2012). In *Mitchell*, the Court held that the employer could meet its burden to prove the defenses of willful misconduct and willful failure or refusal to use a safety device without having to show an element of perversity, but reiterated the requirement that it must prove that the employee's conduct was willful. *Mitchell,* 368 S.W.3d at 453. In order to successfully defend a workers' compensation claim on the basis of willful misconduct, willful disobedience of safety rules, or willful failure to use a safety device under Tennessee Code Annotated section 50-6-110(a), the *Mitchell* Court adopted a four-step test: (1) the employee's actual, as opposed to constructive, notice of the rule; (2) the employee's understanding of the danger involved in violating the rule; (3) the employer's bona fide enforcement of the rule; and, (4) the employee's lack of a valid excuse for violating the rule. *Id*.

7

Here, the facts showed a DOT rule allows commercial truck drivers, such as those employed by Zipp, to drive a semi-truck no more than eleven hours before requiring them to stop and rest for ten hours. What is unclear, however, is whether Mr. Thomas actually violated the rule. Both Mr. Lannom and Mr. Thomas testified they did not know if the hours Mr. Thomas spent stuck on the interstate in icy weather counted as part of the eleven-hour driving period. Mr. Lannom described this as a "gray area" for application of the rule.

Furthermore, even if Mr. Thomas did violate the rule, his uncontroverted testimony showed the Zipp dispatcher instructed him to continue working despite his lack of sleep and extensive time driving without rest. Zipp cannot on the one hand demand Mr. Thomas violate the safety rule and then cite the same rule as a reason to deny him workers' compensation benefits. In the opinion of this Court, Zipp's actions did not constitute bona fide enforcement of the DOT rule.

Zipp also cited lack of medical causation as a defense. On this point, the Workers' Compensation Law provides, "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015). Shown to a reasonable degree of medical certainty means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility. Tenn. Code Ann. § 50-6-102(14)(D) (2015). Thus, causation must be established by expert medical testimony, and an employee's lay testimony, without corroborative expert testimony, does not constitute adequate evidence of medical causation. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *12 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

Zipp's argument regarding medical causation at this stage of the proceedings is incorrect. Carilion noted Mr. Thomas' syncopal episode likely occurred due to lack of sleep. This statement does not conform to the statute's requirement that causation be shown to a reasonable degree of medical certainty that the injury contributed more than fifty percent in causing the need for medical treatment. However, at an expedited hearing, an employee need not establish the compensability of his or her claim by a preponderance of the evidence. *See Lewis v. Molly Maid, et al.,* No. 2015-06-0456, 2016 TN Wrk. Comp. App. Bd. LEXIS 19, at *8-9 (Tenn. Workers' Comp. App. Bd. Apr. 20, 2016). Rather, if the employee comes forward with sufficient evidence to support that a work event resulted in injury, it may also be sufficient to support an order compelling an employer to provide a panel. *Id.*

Here, Mr. Thomas credibly testified he passed out after an exhausting drive making deliveries and retrieving loads for Zipp. Additionally, the medical records characterized the event as work-related. The history in those medical records is essentially consistent with the description of events Mr. Thomas provided at the

8

expedited hearing. Zipp's rebuttal evidence consisted entirely of a report prepared by Dr. Garside, an orthopedic surgeon, who opined based on a review of the records and the video of the syncope episode that Mr. Thomas' exhaustion did not cause him to pass out. To this Court's knowledge, Dr. Garside never examined or even spoke with Mr. Thomas before preparing the report. Because Dr. Garside essentially had no connection with Mr. Thomas or involvement in his treatment, the Court places little weight on his report.

The Court also finds Zipp's idiopathic defense non-compelling. Zipp relies on *Sudduth v. Williams*, 517 S.W.2d 520 (Tenn. 1974), but this case is distinguishable from the facts here. In *Sudduth*, the employee suffered significant injury when he had a seizure in a workplace bathroom and fell to the floor. The trial court found the injury was idiopathic and, therefore, noncompensable. *Id*. at 523. The employee in *Sudduth* had a history of seizure activity and the Court relied heavily on the medical evidence concerning the seizure history. In contrast, Mr. Thomas had no real history or syncope and the medical evidence noted his episode was "probably due to sleep loss." In sum, Court concludes Mr. Thomas is likely to prevail at a hearing on the merits in proving he suffered a prima facie injury in the course and scope of his employment for Zipp.

Turning to the requested relief, Zipp denied this claim without ever providing a panel. The Court finds Mr. Thomas is entitled to a panel of neurologic specialists from which to select a physician. It shall then become the responsibility of the parties to determine whether the physician believes Mr. Thomas' syncopal episode is causally related to the exhaustion resulting from his work for Zipp.

### III. Mr. Thomas claim for temporary disability benefits and past medical expenses is denied at this time.

Mr. Thomas additionally seeks reimbursement for past medical expenses. The Workers' Compensation Law provides that employers must furnish, free of charge to the employee, medical treatment made reasonably necessary by the work-related accident. *See* Tenn. Code Ann. § 50-6-204(a)(1)(A) (2015). On the present record, the Court cannot order payment of past medical expenses, but Mr. Thomas may seek payment at the compensation hearing if a physician determines his syncopal episode was causally-related to his work.

Finally, Mr. Thomas seeks temporary disability benefits. In *Jones v. Crencor,* No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015), the Appeals Board held:

> An injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978).

Until these criteria are established, the Court is unable to grant such benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Mr. Thomas' injuries shall be paid and Zipp or its workers' compensation carrier shall provide Mr. Thomas with medical treatment for these injuries as required by Tennessee Code Annotated section 50-6-204 (2015), to be initiated by Zipp or its workers' compensation carrier providing Mr. Thomas with a panel of neurological specialists. Medical bills shall be furnished to Zipp or its workers' compensation carrier by Mr. Thomas or the medical providers.

2. Mr. Thomas' claim for past medical bills and temporary disability benefits is denied at this time.

3. This matter is set for an Initial (Scheduling) Hearing on July 25, 2016, at 10:30 a.m. (CDT).

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

   **ENTERED THIS THE** 14th **DAY OF JUNE, 2016.**


_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

10

Initial Hearing:

An Initial (Scheduling) Hearing has been sent for **July ____, 2016, at ___:00 __.m. Central Time** with **Judge Joshua Davis Baker, Court of Workers' Compensation Claims. You must call 615-741-2113 or toll free at 855-874-0474 to participate in the Initial Hearing.**

**Please Note:   You must call in on the scheduled date/time to  participate.  Failure to call in may result in a determination of the issues without your further participation.  All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board.  To file a Notice of Appeal, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2.  File the completed form with the Court Clerk within seven business days of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3.  Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4.  The appealing party is responsible for payment of a filing fee in the amount of $75.000.  Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment.  Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service.  In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee.  The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter.  The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5.  The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal.  Alternatively, the parties may file a joint statement of

the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

**APPENDIX**

Exhibits:

1. Medical Records of Horace Wade Thomas
2. Affidavit of Horace Wade Thomas
3. Dr. Garside's Report
4. First Report of Injury
5. Wage Statement
6. Notice of Controversy
7. Termination Letter from Scott Lannom
8. Denial Letter from Occusure
9. Phone Records
10. Alliance Trip Summary
11. Correspondence from Middle Tennessee Family Care
12. Medical Bills
13. Surveillance Video

Technical record:[4]

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Show Cause Hearing Order
5. Show Cause Order – Notice of Hearing
6. Zipp's Position Statement
7. Mr. Thomas' Position Statement

---

[4] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on this the 14th day of June, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| H. Wade Thomas | X | | | | X | 7888 Cairo Bend Rd<br>Lebanon, TN 37087<br>wadestruck@live.com |
| B. Duane Willis, Attorney | | | | | X | dwillis@morganakins.com |

_____

Penny Shrum, Court Clerk
Wc.courtclerk@tn.gov

14