**FILED**

**August 2, 2016**

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 1:30 P.M.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Horace Wade Thomas ) | Docket No. 2015-06-0546 |
| ) | |
| v. ) | State File No. 57850-2015 |
| ) | |
| Zipp Express, et al. ) | |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | |
| Compensation Claims ) | |
| Joshua D. Baker, Judge ) | |

---

### Affirmed and Remanded - Filed August 2, 2016

---

In this interlocutory appeal, the employee alleges he was injured in a fall after experiencing an episode of syncope due to sleep deprivation resulting from his job duties. The employer denied the claim, asserting the fall was idiopathic and that there was insufficient medical evidence to establish a causal relationship between the syncopal episode and the employment. Following an expedited hearing, the trial court ordered the employer to provide a panel of physicians from which the employee could select a physician for evaluation and treatment of any work-related injuries, but denied the employee's request for temporary disability benefits and payment of medical expenses already incurred. The employer has appealed. Having carefully reviewed the record, we affirm the trial court's decision and remand the case for further proceedings as may be necessary.

Judge David F. Hensley delivered the opinion of the Appeals Board, in which Judge Marshall L. Davidson, III, and Judge Timothy W. Conner joined.

B. Duane Willis, Nashville, Tennessee, for the employer-appellant, Zipp Express

Horace Wade Thomas, Lebanon, Tennessee, employee-appellee, pro se

### Factual and Procedural Background

Horace Wade Thomas ("Employee"), a sixty-year-old resident of Wilson County, Tennessee, was employed by Zipp Express ("Employer") as a truck driver on February

19, 2015, when he suffered injuries that he alleges are work-related.[1] He asserts that he suffered sleep deprivation as a result of his employment and, consequently, experienced an episode of syncope resulting in a fall and head laceration that required medical treatment. Specifically, on February 17, 2015, Employee had delivered a load to a location in Wisconsin and was instructed by a dispatcher to pick up another load in Green Bay, Wisconsin for delivery to Salem, Virginia. Employee testified that he questioned the dispatcher, stating that he understood the area he would have to travel to complete the delivery was expecting bad weather. Employee stated that the dispatcher confirmed the instructions to pick up and deliver the load. After picking up the cargo, he stopped for the night in Gary, Indiana, having logged eleven hours of driving that day.[2]

The following day, February 18, 2015, Employee began driving at about 9:15 in the morning. While driving in West Virginia on his way to Salem, Virginia, bad weather and road closures caused him to become stranded on the road. He called Employer at about 6:00 p.m. to report that he was stuck on the roadway, and he testified that he was there "all night just not moving." He explained that he needed to stay awake while stranded even though the truck was not moving because he did not know when traffic would be able to move, and he could not risk going to sleep and being the cause of additional traffic delays. When the traffic resumed moving about 5:30 the next morning, he notified dispatch that he would be stopping because he was "give out" and needed rest. He made his way to a rest area where he slept until about 7:15 a.m., finally arriving at the Salem, Virginia delivery destination at 7:47 a.m. on February 19, 2015.[3] Unloading was completed just after 10:00 a.m., and Employee was informed that he needed to pick up another load at another location. He testified that when he informed his dispatcher that he was tired and needed to stop, the dispatcher instructed him to pick up the load before stopping. As directed, Employee proceeded to Waynesboro, Virginia, arriving at approximately 2:00 p.m. His log indicates he left the Waynesboro pick-up location at approximately 4:30 p.m. en route to Shelbyville, Tennessee. He stopped for the evening sometime before 6:00 p.m. at a truck stop.

Employee testified that upon arriving at the truck stop he "was hungry, went inside, and walked in – up to the cooler and grabbed two bottles of water and turned then

---

[1] In its June 14, 2016 expedited hearing order, the trial court states that Employee is fifty years of age and that the dates involved in Employee's trip and syncopal episode occurred in January 2015. However, it is clear in the record that Employee is sixty years of age and that the dates of Employee's trip and his syncopal episode were in February 2015.

[2] The testimony is uncontroverted that pursuant to Department of Transportation ("DOT") regulations, a commercial truck driver is allowed to drive a maximum of eleven hours and then is required to have a ten-hour rest.

[3] The testimony is also uncontroverted that time spent on the road when the truck is not moving, but is not shut down, is a "gray" area for which DOT regulations provide little or no guidance.

to walk out . . . and that's when everything just went black." He testified he has no recollection of passing out or of subsequent events until he woke up in the "ambulance."[4]

Employee received emergency medical care at Roanoke Memorial Hospital, where he was admitted on February 19, 2015. The record of a neurology consult on February 21, 2015 states that Employee "fainted after losing a lot of sleep and is living under [an] enormous amount of stress." His neurological examination was "normal (except for peripheral neuropathy, distal symmetrical, likely due to his uncontrolled diabetes)." In addition to stress, the report listed the "Impression" as including "[s]yncope, probably due to sleep loss, question if there is superimposed sleep apnea." The "Impression" in a cardiology consult note of the same date included "Syncope [of] undetermined etiology. [History] not suggestive of vaso-vagal syncope, no preceding prodrome."

After comprehensive objective testing, Employee was discharged from the hospital on February 22, 2015 with multiple diagnoses including syncope, uncontrolled diabetes, and previously undiagnosed high blood pressure, for which he was instructed to begin a medication regimen.

Employee followed up with his primary care provider in Tennessee for his diabetes, although there is no indication he received any treatment for injuries or symptoms related to his fall. At Employer's request, Dr. Blake Garside performed a records review and provided a report addressing questions presented by Employer. In addition to the available medical records, Dr. Garside also considered surveillance video obtained from the truck stop that showed Employee's syncopal episode. After reviewing the information, Dr. Garside issued a report on May 27, 2016, which reflected his opinions as follows:

Question #1: Based upon review of your medical records and information provided along with the video, can you articulate the cause of the employee's fall based upon the manner or direction in which he fell?

It appears the patient suffered a syncopal episode while in the truck stop. It did not appear to be a trip or fall. He appears to fall unprovoked backwards striking his head and remains unconscious on the floor.

Question #2: What was the cause, and secondarily, was that cause more than 50% related to his work as a truck driver in light of other diagnoses and medical issues identified as a syncope event, unknown etiology, diabetes mellitus, high blood pressure or potential sleep apnea [that] could have been the cause[]?

---

[4] Employee's reference to an "ambulance" appears to refer to a medical transport flight rather than a ground ambulance.

Syncopal episodes occur due to global hypoperfusion. There are multiple causes ranging from cardiac to neurologic issues most likely due to decreased blood flow to the brain. These can include cardiac syncope, vascular disease, arrhythmias, cardiac outflow obstruction, acute [myocardial infarctions], aneurisms, and pulmonary embolus. Also vasovagal syncope of which this event did not appear consistent based on the video and cardiology assessment. Syncope can also be caused by orthostatic hypotension and dehydration, neurologic issues such as seizure disorders or intracerebral hemorrhages. Sleep deprivation is not consistently demonstrated in the literature as a primary or secondary cause of syncopal episodes. Therefore it is unlikely that the sleep deprivation noted by [Employee] contributed more than 50% in causing this injury or episode.

Employer denied the claim, stating in a Notice of Controversy that the "[i]njury is not considered compensable due to the lack of a timely notice and information gathered supporting the injury did not occur within the course and scope of employment."[5] Employee filed a petition for benefit determination and, following unsuccessful mediation, a dispute certification notice was issued. An expedited hearing was held on May 31, 2016, after which the trial court issued an order requiring Employer to provide "medical treatment for [Employee's] injuries . . . to be initiated by [Employer] providing . . . a panel of neurological specialists." The trial court denied Employee's request for temporary disability benefits and payment of past medical expenses.[6] Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2015). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)     Violate constitutional or statutory provisions;
(B)     Exceed the statutory authority of the workers' compensation judge;
(C)     Do not comply with lawful procedure;

---

[5] Although Employer raised notice as a defense in the trial court, Employer has not made any argument on appeal that timely notice was not given. Thus, we decline to address the issue.

[6] Employee did not appeal the trial court's denial of temporary disability benefits or payment of medical expenses. Therefore, we need not address those issues.

4

(D)    Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or

(E)    Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

## Analysis

Employer presents the following issue in its brief on appeal: "Whether the evidence preponderates against the Court's conclusion that Employee is entitled to medical benefits as a result of his alleged injury." In its argument, Employer asserts the trial court "came to two specific findings that were in error." First, it asserts the trial court erred in finding that Employee presented sufficient evidence that his syncopal episode was caused by sleep deprivation. Finally, Employer asserts the trial court erred in finding that Employer did not establish that Employee's injury was idiopathic.

We have previously addressed the standard of proof required in expedited hearings. At an expedited hearing, an employee need not prove each and every element of his or her claim by a preponderance of the evidence in order to obtain temporary disability benefits or medical benefits. *E.g., McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits consistent with Tennessee Code Annotated section 50-6-239(d)(1). *Id.* Thus, while an injured worker retains the burden of proof at all stages of a workers' compensation claim, a trial court can grant relief at an expedited hearing if the court is satisfied that the employee has met the burden of showing that he or she is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2015).

"This lesser evidentiary standard . . . does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at * 6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). It is our responsibility to conduct an in-depth examination of the trial court's factual findings and conclusions, *see Wilhelm v. Krogers*, 235 S.W.3d 122, 126 (Tenn. 2007), within the mandate set out in Tennessee Code Annotated sections 50-6-217(a)(3) and 50-6-239(c)(7) (2015). Section 50-6-239(c)(7) provides a presumption "that the findings and conclusions of the workers'

compensation judge are correct, unless the preponderance of the evidence is otherwise." Furthermore, when the trial court has seen and heard the witnesses, considerable deference must be given to the trial court's factual findings. *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008).

In addition, a trial judge "has the discretion to conclude that the opinion of one expert should be accepted over that of another expert." *Reagan v. Tennplasco*, No. M2005-02020-WC-R3-CV, 2006 Tenn. LEXIS 1209, at *10 (Tenn. Workers' Comp. Panel Dec. 27, 2006). As stated by the Tennessee Supreme Court, "[w]hen faced . . . with conflicting medical testimony . . ., it is within the discretion of the trial judge to conclude that the opinion of certain experts should be accepted over that of other experts and that it contains the more probable explanation." *Thomas v. Aetna Life and Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991) (internal quotation marks omitted).

In the instant case, the trial court determined that Employee presented sufficient evidence that he would likely succeed at a hearing on the merits in establishing the compensability of his claim. The trial court noted that the medical records of Employee's treatment at Roanoke Memorial Hospital "characterized the event as work-related," and that these records "noted [Employee's] syncopal episode likely occurred due to lack of sleep." The medical records included stress as an "Impression," as well as "peripheral neuropathy . . . likely due to mild diabetes." The "Impression" also included "[s]yncope, probably due to sleep loss, question if there is superimposed sleep apnea." In addition, the record of Employee's cardiology consultation during his hospitalization indicated his syncopal episode was of "undetermined etiology." While the medical records alone fall short of establishing compensability by a preponderance of the evidence, when such reports are considered in combination with Employee's testimony, which the trial court found to be credible, the evidence is sufficient to support the trial court's order for a panel of physicians. Given Employee's unrefuted testimony that his dispatcher instructed him to retrieve additional loads despite his lack of sleep, we find that at this stage of the proceedings the testimony and the record as a whole support the trial court's determination that Employee is entitled to a panel of physicians.

Employer asserts that the trial court "should have placed greater weight [on] the medical records review performed by Dr. Garside." Arguing that Employee's medical proof "should have been classified as equivocal and not sufficient to meet his burden of [proving] a prima facie case," Employer concludes that it was error "[t]o dismiss Dr. Garside's report because of the fact it was only a medical records review." As noted above, a trial judge has the discretion to conclude that one medical opinion should be accepted over that of another. *Thomas*, 812 S.W.2d at 283. Furthermore, lay testimony can serve to bolster the opinion of one medical care provider over that of another. *Williams v. Tecumseh Products Co.*, 978 S.W.2d 932, 935 (Tenn. 1998). Here, the trial court noted that "Dr. Garside never examined or even spoke with [Employee] before preparing the report . . . [and] essentially had no connection with [Employee] or

involvement in his treatment," which persuaded the trial court to "place[] little weight on his report." Dr. Garside answered specific questions concerning causation and provided opinions "based on reasonable medical probability," concluding that "it is unlikely that the sleep deprivation . . . contributed more than 50% in causing this injury or episode." While Employee's proof may or may not be sufficient to establish causation by a preponderance of the evidence at trial, we cannot say that Employee failed to present sufficient evidence to support the trial court's determination that he is entitled to a panel of physicians. However, the trial court's determination of this issue does not relieve Employee of the burden of establishing medical causation by a preponderance of the evidence at a hearing on the merits.

Finally, we address Employer's assertion that the trial court erred in determining that Employee's injury was not idiopathic. "An idiopathic injury is one that has an unexplained origin or cause, and generally does not arise out of the employment unless 'some condition of the employment presents a peculiar or additional hazard.'" *Veler v. Wackenhut Servs.*, No. E2010-00965-WC-R3-WC, 2011 Tenn. LEXIS 78, at *9 (Tenn. Workers' Comp. Panel Jan. 28, 2011) (quoting *Shearon v. Seaman*, 198 S.W.3d 209, 215 (Tenn. Ct. App. 2005)). *See also McCaffery v. Cardinal Logistics*, No. 2015-08-0218, 2015 TN Wrk. Comp. App. Bd. LEXIS 50, at *9 (Tenn. Workers' Comp. App. Bd. Dec. 10, 2015). Here, Employer asserts that "[w]ithout [a] medical explanation to his syncopal episode . . . this is a classic case of an idiopathic injury in line with [*Sudduth v. Williams*, 517 S.W.2d 520 (Tenn. 1974)]." In *Sudduth*, the employee suffered a seizure at his place of employment described in the emergency room records as an alcoholic seizure, which caused Employee to fall and strike his head. *Id.* at 521. The proof was disputed concerning whether the employee struck his head only on the floor or whether he struck it on a piece of machinery as he fell. *Id.* The employee was released from the emergency room and was found a short time later unconscious at a nearby intersection. *Id.* He was taken back to the hospital where he later died of what an autopsy revealed was a subdural hematoma. *Id.* The Tennessee Supreme Court affirmed the trial court's determination that the injury was idiopathic based on medical records reflecting a recent seizure disorder diagnosis. *Id.* at 523. Also, the Supreme Court determined the evidence was sufficient to support a finding that there was no hazard incident to the employment that caused the fall. *Id.*

In the present case, the trial court found the facts surrounding Employee's injury to be distinguishable from those in *Sudduth*. Employee may, indeed, have simply fallen without having tripped or slipped. Although the discussion in the trial court's June 14, 2016 order concerning Employer's idiopathic injury defense is not entirely clear, we interpret the trial court's order to mean Employee established that a hazard to which he was exposed as a result of his employment, specifically sleep deprivation, was causally related to his syncopal episode and injury. The trial court concluded that Employee's "activity was rationally connected to, and therefore arose primarily out of, his employment." Whether a particular activity is "rationally connected to" the employment

7

does not answer the ultimate question of whether an injury resulting from such activity arose primarily out of the employment as contemplated in Tennessee Code Annotated section 50-6-102(14). Nevertheless, we cannot say that the trial court erred in determining that Employee came forward with sufficient evidence *at this stage of the proceedings* to support an order for medical benefits.

## Conclusion

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's finding that Employee's injury was not idiopathic. We further hold that the evidence does not preponderate against the trial court's decision to order Employer to provide a panel of physicians from which Employee can select a physician for evaluation and to provide medical care made reasonably necessary to treat any injuries determined to have arisen primarily out of and in the course and scope of the employment as contemplated in section 50-6-102(14). Finally, we hold that the trial court's decision does not violate any of the standards set forth in Tennessee Code Annotated section 50-6-217(a)(3). Accordingly, the trial court's decision is affirmed, and the case is remanded for any further proceedings that may be necessary.

David F. Hensley, Judge
Workers' Compensation Appeals Board

8



**FILED**

**August 2, 2016**

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

**Time: 1:30 P.M.**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Horace Wade Thomas | ) | Docket No. 2015-06-0546 |
| | ) | |
| v. | ) | |
| | ) | State File No. 57850-2015 |
| Zipp Express, et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 2nd day of August, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Horace Wade Thomas | | X | | | X | 7888 Cairo Bend Rd Lebanon, TN 37087 wadestruck@live.com |
| B. Duane Willis | | | | | X | dwillis@morganakins.com |
| Joshua D. Baker | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Jeanette Baird
Deputy Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-0064
Electronic Mail: Jeanette.Baird@tn.gov